LENA WEISS, Plaintiff, v. NEW JERSEY FIDELITY AND PLATE GLASS INSURANCE COMPANY, Defendant.

Supreme Court, New York County, February 24, 1928.

Insurance — automobile liability insurance — action under Insurance Law, § 109 — plaintiff obtained judgment on inquest in action against defendant's assured for personal injuries, which was returned unsatisfied — insurer may assert any defense against injured person which it might have asserted in action against it by assured — defendant gave assured notice of reservation of rights in undertaking defense of action between plaintiff and assured because of delay in reporting accident — letters bearing on delay admissible as evidence in this action — complaint dismissed — word "insolvency," as used in Insurance Law, § 109, means general financial irresponsibility.

This is an action under section 109 of the Insurance Law to recover from defendant insurance company, under an automobile liability policy issued by defendant to a third party against whom has been returned unsatisfied a judgment obtained on inquest in an action by plaintiff arising from injuries suffered by plaintiff by reason of a collision between an automobile owned and driven by said third party and one in which plaintiff was a passenger. The accident happened August 29, 1927, but notwithstanding a provision in the policy requiring an immediate written notice of any accident, no report was made thereon for approximately two months.

Since, in an action of this character, an insurance company may assert any defense against the injured person which it might have asserted in an action against it by the assured, defendant, having explicitly reserved its rights in undertaking the defense of the action between plaintiff and defendant's assured by reason of the delay in reporting the accident, is entitled to offer in evidence letters bearing upon that delay.

In the absence of any waiver by the insurance company of its reservation of rights, the complaint must be dismissed.

The word "insolvency," as used in section 109 of the Insurance Law, means general financial irresponsibility and should not be construed as referring only to a judicially declared insolvency, so that the inability of the insured here to meet his financial obligations in due course is sufficiently prima facie established by the return of an execution unsatisfied to the sheriff of the county where the insured resided.

The claim by the defendant that it is not liable because the primary action resulted in an inquest, and that an inquest is not "a trial of the issue," is without merit.

The provision of the policy that no action shall be maintained against the company unless it be for the recovery of money actually paid by the assured in full satisfaction of judgment is rendered nugatory and of no effect by the express provisions of section 109 of the Insurance Law.

ACTION against the defendant insurance company based upon section 109 of the Insurance Law (added by Laws of 1917, chap. 524, as amd. by Laws of 1924, chap. 639).

*S. Earl Levine,* for the plaintiff.

*Spalding & McCabe* [*Lyman A. Spalding* of counsel], for the defendant.

GIBBS, J.   Plaintiff seeks under the terms of an automobile liability policy issued by the defendant company to one Max Oppenheimer as the insured to recover the amount of a judgment previously obtained by plaintiff against said Oppenheimer.   Execution on said judgment has been returned unsatisfied and is claimed to be uncollectible against the insured by reason of his alleged insolvency.

The original action was for damages for personal injuries sustained by plaintiff in a collision between an automobile owned and driven by Oppenheimer, the insured, and an automobile in which plaintiff was a passenger.   In that action, upon an inquest before the court and a jury, plaintiff secured a verdict of $5,000 for damages, the costs were taxed in the sum of $132.28, and on May 18, 1923, a judgment was entered against Max Oppenheimer, the insured, in favor of the plaintiff for the sum of $5,132.28.   On August 19, 1924, the execution issued to the sheriff of New York county was returned as wholly unsatisfied and thereafter and on August 21, 1924, plaintiff promptly started this present action against the defendant insurance company.   Upon this trial the jury was waived and both sides stipulated that the court should direct a verdict as though rendered by a jury without the necessity of findings.   The defendant insurance company as its chief defense urges that Oppenheimer, the insured, breached the terms and provisions of the liability insurance policy in that he failed to give the defendant company due and timely notice of the accident as required by the terms of the policy, and further that said insured failed in certain other respects to comply with the policy provisions. This plaintiff, on the other hand, insists that such defense is not available as against the plaintiff and in any event such breach and failure by the insured, if any, was waived by the defendant insurance company.

The automobile accident in which the plaintiff sustained her injuries occurred on August 29, 1920, and it is conceded that no notice of this accident was given to the defendant company by the insured until more than two months thereafter and until after the insured had been served with the summons and complaint in plaintiff's original action.   The first notice of the accident was

received by the defendant insurance company on November 15, 1920, by means of a letter from the insured's broker, which inclosed the two summonses and complaints in the original actions against the insured, and in which letter, dated November fifteenth, it was stated: " We have been advised of a loss under the above-mentioned policy * * *. We are herewith inclosing summons and complaints which was served on the above assured [Max Oppenheimer] Saturday, November 13; 1920. We are also inclosing letter from the assured relative to this accident." Inclosed in this communication was the letter from Max Oppenheimer, the assured, referred to therein, in which letter the assured stated: " Inasmuch as no car was damaged, because there was no collision and nothing of the kind, I did not report it to you." The defendant insurance company immediately and on November 18, 1920, wrote to Max Oppenheimer, the insured, a letter which the insured received, stating: " We are in receipt of Supreme Court Summons, New York County, Emerick J. Weiss v. Max Oppenheimer and Lena Weiss v. Max Oppenheimer. The company accepts these summonses and complaints *under a Reservation of Rights.* The accident is alleged to have occurred on the 29th day of August, 1920. The summonses and complaints were received at this office on the 15th day of November, 1920. A careful examination will be made and you will be advised later as to the position the company desires to take in these matters. Our rights are *reserved because of the delay in notifying us.*" (Italics ours.) On November 20, 1920, Max Oppenheimer, the insured, was interviewed by the claim agent of the defendant insurance company and made a written statement over his signature concerning the facts and circumstances of the accident, in which the assured stated: " I know my car didn't strike his car at all any time. There was no damage done to his car and no one was hurt. This other car was a small car but full of people. I do not know how many were there. There were seven in my car. * * * Inasmuch as there was no accident, no damage done and no one hurt, I didn't report this occurrence and notified my broker as soon as I received the summons and complaint on November 13, 1920. I have read the above and found it true."

The automobile liability policy issued by the defendant contained the following provisions: " The company hereby agrees to indemnify the herein assured against loss from liability imposed by law upon the assured for damages on account of bodily injuries, including death resulting therefrom accidentally suffered within the policy period, by any person or persons not employed by the assured, by reason of the ownership, maintenance or use of any

of the automobiles enumerated and described in the schedule."
The insurance policy also provided:

" This insurance is subject to the following conditions, and
failure on the part of the assured to comply with any of said
conditions shall forfeit the right to recover hereunder.

" Notice: The assured shall give to the company or to its duly
authorized agent immediate written notice of any accident with
the fullest information obtainable.  * * *

" The assured shall at all times render to the company all
possible co-operation and assistance.  The assured shall not volun-
tarily assume or admit any liability for any accident, and no loss
arising from a liability which has been voluntarily assumed or
admitted by the assured shall be covered hereunder."

The policy of insurance also had annexed to it a " rider " which
was incorporated as part of the policy in compliance with section
109 of the Insurance Law, which rider provided: " The insolvency
or bankruptcy of the assured hereunder shall not release the com-
pany from the payment of damages for injuries sustained or loss
occasioned during the life of this policy, and in case execution
against the assured is returned unsatisfied in an action brought
by the insured, or his or her personal representative in case death
results from the accident, because of such insolvency or bank-
ruptcy, then an action may be maintained by the injured person
or his or her personal representative against this company under
the terms of this policy for the amount of the judgment in the
said action not exceeding the amount of this policy.  Nothing
herein contained shall vary, alter or extend any other provision
or condition of the policy."

In an action of this character it is established that the insurance
company may assert any defense against the injured person which
it might have asserted in an action against it by the insured.
(*Schoenfeld* v. *New Jersey Fidelity & Plate Glass Ins. Co.*, 203
App. Div. 796; *Roth* v. *National Automobile Mut. Casualty Co.*,
202 id. 667; *Coleman* v. *New Amsterdam Casualty Co.*, 126 Misc.
380; *Hermance* v. *Globe Indemnity Co.*, 221 App. Div. 394.)  It is
equally well established that the obligation of good faith in carrying
out what is written in a contract is a contractual obligation of
universal force which underlies all written agreements.  (*Brassil*
v. *Maryland Casualty Co.*, 210 N. Y. 235.)  If on the facts in this
case Max Oppenheimer, the insured, failed to carry out the
obligation imposed upon him by the terms of the policy to give
immediate written notice to the insurance company of the accident
with the fullest information obtainable, and the company undertook
the conduct of the defense of this action under an explicit reservation

of its rights, which was understood and acquiesced in by the assured, there can be no liability under the policy against the insurance company in favor of the insured, and such circumstances being established would operate as a bar to any recovery by this plaintiff in this action.   On August 29, 1920, when the accident occurred, Max Oppenheimer certainly must have been aware that something out of the ordinary occurred and that an accident did take place.   He himself was driving his car, and as stated in his letter dated November 15, 1920, received by the insurance company together with the summons and complaint on that date, Oppenheimer at the time of the accident went into a ditch.   Nevertheless he insists that no collision occurred and " nothing of the kind " and that no car was damaged.   Any reasonable man under such admitted circumstances must have had sufficient information to persuade him that he had been in an accident.   As a matter of fact, the plaintiff was seriously injured to the extent that eventually her left breast was removed.   Clearly, under the terms of this policy, the assured should have given immediate written notice to the insurance company of this occurrence " with the fullest information obtainable."   As above stated, the first intimation that the defendant company had of the occurrence of this accident was on November 15, 1920, over two months after its occurrence and not until after Max Oppenheimer, the insured, had been served with two summonses and complaints for damages claimed due to a collision caused solely by his own negligence.

The defendant company accepted these summonses and complaints only upon a specific reservation of its right to disclaim liability because of the failure of the assured to give prompt written notice of the accident, and has never changed its attitude in this respect.   Oppenheimer when interviewed and examined by the company's claim agent on November 20, 1920, and during all the subsequent proceedings taken by the insurance company in the defense of this action, including the preparation of the answers, as far as the record discloses, never protested or declined to allow the company to proceed in the conduct of the defense of this action under its expressed and specific reservation of rights, of which there can, on this record, be no question but that the assured had full knowledge.   The consent of the assured that the company may undertake the defense of the litigation and reserve its right to repudiate its liability thereafter may be either expressed or inferred from the acquiescence of the assured.   (*Farrell* v. *Merchants Mutual Automobile Liability Insurance Co.*, 203 App. Div. 118.)

From the evidence in this record it is clearly apparent that

Max Oppenheimer, the insured, fully understood and acquiesced in this reservation of rights by the defendant insurance company.

The plaintiff places reliance upon the case of *Miller* v. *Union Indemnity Co.* (209 App. Div. 455) as supporting her contention that the company waived its reservation of rights by conducting the defense of the primary action. The *Miller* case is not in point, as the assured never consented or acquiesced in any reservation of rights, but on the contrary, refused to sign any waiver and demanded that the defendant proceed and conduct the defense.

I am definitely of the opinion that upon this record this defendant company explicitly reserved its rights in undertaking the defense in the primary action and that the assured understood and consented to such reservation without objection, and that under the circumstances here existing, there was no waiver by the insurance company of its reservation of rights.

It has been determined that the word "insolvency" as used in section 109 of the Insurance Law must be given the broad meaning of general financial irresponsibility, and is not to be construed as referring only to a judicially declared insolvency. (*Miller* v. *Union Indemnity Co.*, 209 App. Div. 455.) I am further of the opinion that the inability of the assured to meet his financial obligations in due course is sufficiently *prima facie* established by the return of an execution unsatisfied to the sheriff of the county where the assured, so far as the record appears, had his domicile, although he was temporarily absent from the United States at the time execution was issued.

The suggestion, however, of the defendant, that in no event is it under liability because the primary action resulted in an inquest before a judge and jury, and that an inquest is not " a trial of the issue," is without merit. The liability of the insurance company is measured by the policy provision which specifies that the company hereby agrees " to indemnify  *  *  *  against loss from the liability *imposed by law upon* the assured for damages on account of bodily injuries." A liability is imposed by law when by proper judicial process and procedure a judgment has been entered against the assured which has become a final judgment because the time to appeal therefrom has expired. (*Schroeder* v. *Columbia Cas. Co.*, 126 Misc. 205; *Dean* v. *Marschall*, 90 Hun, 335.) A judgment entered upon the verdict of a jury taken on an inquest is just as much a final judgment as one entered upon the verdict of a jury after a litigated trial. The judgment upon the inquest becomes final one year from the time it is docketed. (Civ. Prac. Act, § 108.) Further, the provision requiring a " trial of the issue " is contained in what is commonly called the " no action " clause

of the policy, which reads as follows: " No action shall be maintained against the company under this policy unless it be for the recovery of money actually paid by the assured in full satisfaction of judgment against the assured after trial of the issue." This entire clause of the policy is rendered nugatory and of no effect as respects the plaintiff in the present action by the express provisions of section 109 of the Insurance Law.

Under the established rule that any defense available to the insurance company against its assured can be asserted in an action of this character against the injured person, the letters offered in evidence upon the trial are admissible as against the assured and accordingly are admitted in this action. They have been considered by the court and proper exception is given to the plaintiff. The established principles of law applied to the undisputed facts in this case require that the complaint be dismissed, with costs. Judgment is directed in favor of the defendant dismissing the plaintiff's complaint, with costs. Exception granted to plaintiff. Motion to set aside verdict and for a new trial will be considered as made and denied, with exception to plaintiff. Thirty days' stay and sixty days to make a case granted. The clerk is directed to enter judgment accordingly.