FRIEDRICH WOLF *vs.* PRUDENTIAL INSURANCE COMPANY OF AMERICA.

MARCH 24, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an action in assumpsit to recover disability benefits alleged to be due under two policies of life insurance issued by the defendant. The case was tried before a justice of the superior court sitting with a jury and, at the conclusion of the plaintiff's evidence, on motion of the defendant, the plaintiff was nonsuited. The case is before us on the plaintiff's exception to this ruling and on two other exceptions taken during the trial.

The facts in evidence are practically undisputed. The plaintiff was the insured in two twenty-year life endowment

policies of the defendant company; one, for $1500, dated January 18, 1930; and the other, for $2000, dated December 11, 1930. Each policy provides for the payment of total and permanent disability benefits. The contract of the parties respecting these benefits is clearly set forth in each policy. Excluding minor variations that are not pertinent in this case, the controlling provisions of that contract are the same in each instance. Hereafter, for convenience, the term "policy" and "contract" will include both policies and both contracts for disability benefits.

Among the provisions in the policy as to the payment of benefits for disability is one which requires that the disability be total and also permanent or deemed to be permanent; and another is one which requires that proof of such disability be submitted to the company during the existence of *total* disability. The provisions relating to the waiver of premiums or the period during which, under certain conditions, the total disability shall be deemed to be permanent need not be specifically mentioned, as they have no material bearing on the decisive issue in the instant case.

The plaintiff, who was fifty-two years of age at the time of the trial in April 1938, testified that, on December 8, 1933, while he was working as a mechanic for the Mack Truck Company of Providence, fixing a motor, the flywheel of the motor, which was being lifted by himself and two other men, fell on his right hand and severely injured it. He was immediately taken to a hospital where his right index finger was amputated. The diagnosis on discharge from that institution after ten days was "compound comminuted fracture of proximal phalanges of the second and third fingers of the right hand, plus multiple contusions and lacerations of hand. Condition on discharge: Improved." He returned to the hospital for treatment from time to time until January 1935, following which date he himself treated the hand by bathing and massage until September of that year, when he went to work for the Abrasive Tool Company.

Since then he has been gainfully employed at his trade, his work with that concern being of a lighter nature than what he was doing at the time of his injury.

The undisputed evidence further shows that the premiums on the policy were always paid at the defendant's office in Providence, and that they were so paid regularly up to the time that this action was instituted. On December 11, 1933, three days after the plaintiff was injured, the plaintiff's wife went to the defendant's office to pay a premium which was due. She testified that she tried to pay the premium with a check payable to her husband and some cash; that the cashier, observing that the check was not endorsed, called her attention to this fact, whereupon she informed the cashier that her husband was unable to endorse it because he was in the hospital; that the cashier then called the manager, to whom the witness explained why her husband could not endorse the check and described to him the injury that he had sustained; that the manager advised her to try and have her husband endorse the check with his left hand; that she did as he advised and that a few days later she brought the endorsed check to the defendant's office and received the premium receipt.

It was not until July 1937 that the plaintiff made claim for disability benefits under the policy. By this time he had been gainfully and continuously employed for more than eighteen months. On August 11, 1937, the defendant disclaimed liability in writing and this suit was thereafter instituted.

The terms of the contract for disability benefits are clearly and plainly set out in the policy. The plaintiff makes no claim of fraud, concealment or deception in the issuance of the policy and there is no evidence that he is illiterate. In the circumstances, we must give the pertinent language in the policy its usual and ordinary meaning. *Grenon* v. *Metropolitan Life Ins. Co.*, 52 R. I. 453. However unfortunate and regrettable the result to the plaintiff

may be, we are not warranted in changing or circumventing the agreement which the parties themselves fairly made. *Perlman* v. *New York Life Ins. Co.*, 105 Pa. Super. 413, 161 A. 752.

The contract provides for the payment of disability benefits for total *and* permanent disability, if proof is furnished by the insured while such disability continues. The provision requiring proof of an existing total and permanent disability is an express condition precedent to the payment of disability benefits under the contract. The nature and extent of disability claimed by an insured cannot be known to the company until the insured furnishes proof of his condition at the time specified. By the contract, the company's liability is made to depend not only on the fact that the disability is both total and permanent, but also that such disability exists when proof thereof is furnished. The purpose of requiring proof by the insured as to a then existing condition is to give the company an opportunity to make a fair investigation of the claim. The company is bound to pay for an existing total and permanent disability, not for one which, while permanent, may have ceased to be total when the claim is made. *Grenon* v. *Metropolitan Life Ins. Co., supra; Perlman* v. *New York Life Ins. Co., supra; Lucas* v. *John Hancock Co.*, 116 Pa. Super. 298, 176 A. 514.

In the instant case there was and is no doubt as to the permanency of the plaintiff's disability. But when he made claim for the payment of disability benefits under his contract with the defendant his disability was not total. His own testimony clearly proves that by that time he had returned to work and had been gainfully employed at his trade as a mechanic for more than eighteen months. There is no evidence as to what his wages were during this period, and, for all that appears in the transcript before us, he may have been earning as much in his present employment as he was when injured. There is therefore no evidence, even by way of reasonable inference, that the plaintiff's disability

was total when he made his claim for disability benefits. In fact, the evidence clearly proves that he was not so disabled at that time. See *Davis* v. *Equitable Life Assurance Soc.,* 61 R. I. 514, 1 A. 2d. 105.

The plaintiff contends that he was not required to give proof of disability, because the company had actual notice of his injury through his wife, when she told the defendant's manager why he had not endorsed the check that she tendered in partial payment of a premium. The plaintiff derives no benefit from his contention. Even if we assume that such notice was given to this manager and constituted notice to the defendant, still it was not a sufficient compliance with the terms of the contract for disability benefits, because under that contract proof of an existing total and permanent disability must be made. This the plaintiff did not do. It was long after his disability had ceased to be total and while gainfully employed that he actually made claim for disability benefits. The decisive factor on this point is the furnishing of proof of permanent and total disability while such disability exists, and not merely that the plaintiff was injured.

The plaintiff further contends that because the defendant's letter of August 11, 1937 denied liability for disability benefits without giving any reason for such action, its denial in general terms constituted a waiver of the provision respecting the furnishing of proof of disability. The fire insurance cases relied upon by the plaintiff to support this position are inapplicable in the instant case because of controlling differences in the facts and the terms of the policies. There might have been merit in the plaintiff's contention if the company had taken such action during the time that total disability existed, but that is not the case here. When the company sent the letter under consideration to the plaintiff, the latter's total disability had ceased to exist for more than eighteen months. The plaintiff derives no benefit from his contention on this point.

The plaintiff excepted to two rulings of the trial court excluding a statement alleged to have been made by an agent of the defendant, who had secured the plaintiff's application for insurance, to the effect that the plaintiff was not entitled to disability benefits for the kind of injuries he had received. He contends that such representation precluded the insurer from setting up as a defense the insured's failure to furnish proof of his disability within the prescribed time. We do not agree with this contention.

The policy plainly provides that "No agent has power . . . to bind the Company . . . by making or receiving any representation or information." There is no evidence that the agent named had any authority from the defendant, either express or implied, except to solicit insurance, and there is no evidence that this agent did anything which in effect would otherwise be sufficient, as a matter of law, to bind the company. It is well established with us that an insurance agent who is empowered merely to solicit applications for insurance is the agent of the applicant and not the agent of the company. *Salvate* v. *Firemen's Ins. Co.,* 42 R. I. 433, and cases cited. Upon consideration of the facts and the decisions referred to, we find no error in the ruling of the trial justice. The plaintiff's exception on this point is therefore overruled.

For the reasons stated, we are of the opinion that there was no error by the trial justice in granting the defendant's motion for a nonsuit, and the exception to this ruling is overruled.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the nonsuit.

*Bellin, Levin & Alprin,* for plaintiff.

*McGovern & Slattery, James A. Higgins,* for defendant.