232 A.2d 610.

JOSEPH CLOUGHERTY *vs.* ROYAL INSURANCE COMPANY, LTD.
*et al.*
SHEILA CLOUGHERTY *vs.* SAME.

AUGUST 10, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. These actions of case were brought to recover damages for personal injuries suffered by Sheila Clougherty, a minor, and consequential damages incurred

by her father, Joseph, which resulted from a collision with a motor vehicle owned by defendant Royal Indemnity Company's insured, Reuben and Edgar Billowitz. The cases are before us on the plaintiffs' appeals from judgments entered pursuant to a decision rendered by a justice of the superior court in the sum of $200 for Joseph and $800 for his daughter against Royal Indemnity Co., a New York corporation licensed to do business in Rhode Island, and hereinafter sometimes referred to as defendant.

The plaintiffs brought these actions under G. L. 1956, §9-2-1 against Royal Insurance Co., Ltd. and Royal Indemnity Co. because they were in doubt as to which company insured the automobile which allegedly negligently collided with the automobile in which plaintiff Sheila was a passenger. The Royal Insurance Co., Ltd. denied it had issued any such policy and a judgment was entered in its favor. However, this doubt has been resolved since Royal Indemnity Co. admits that it issued a liability policy covering the motor vehicle in question. We shall treat the appeals accordingly.

This controversy results from an accident which occurred on April 27, 1963 in the city of East Providence. On that date Sheila was injured when the automobile in which she was a passenger collided with a motor vehicle operated by Edgar Billowitz and owned by Reuben Billowitz, both of Snyder, New York. The Billowitz car was insured by defendant, the policy coverage being limited to $20,000.

Sheila and her father commenced separate actions at law in the superior court in Providence against Reuben and Edgar Billowitz. These actions were tried before a jury and resulted in verdicts for the plaintiffs on June 30, 1965 in the following amounts: Sheila Clougherty, p.a. vs. Reuben Billowitz, C.A. No. 172423, $14,677.80; Joseph Clougherty vs. Reuben Billowitz, C.A. No. 172424, $3,318.60; Sheila Clougherty, p.a. vs. Edgar Billowitz, C.A. No. 173915

$14,417.80; and Joseph Clougherty vs. Edgar Billowitz, C.A. 173916, $3,260.01. On July 16, 1965, judgments were entered on the verdicts as of June 30, 1965.

On July 29, 1965 plaintiffs notified the insured's attorney of record and defendant insurer of the entry of the judgments. The judgments having remained wholly unsatisfied although more than thirty days had expired from the time of the service of such notice, plaintiffs instituted the instant actions on September 20, 1965 to recover a sum not exceeding the amounts of said judgments or the amount of the applicable limit of coverage under the policy of insurance, whichever may be the lesser, pursuant to New York law.[1] The defendant Royal Indemnity Co., having paid $19,000 of the $20,000 coverage, made an offer of judgment to plaintiffs on March 4, 1966 in the amount of $1,000 in accordance with rule 68(a) of the rules of civil procedure of the superior court. This offer was refused. The parties agree that New York law governs.

The defendant filed a plea of the general issue together with notice that it intended to offer evidence of the applicable New York law. It appears from the sworn answers of defendants to plaintiffs' interrogatories that the following claims and cases against the Billowitzs arose out of the same accident and resulted in the following dispositions and payments on the following dates:

1. Susan T. and Russell Gibaud     $ 6,300
   Judgment, February 9, 1965

2. Frank Petrone     $ 2,700
   Settlement, June 17, 1965

3. Judith and Nathan Reich     $10,000
   Judgment, June 16, 1965
   Paid, November 11, 1965

---

[1] Insurance Law, 27 McKinney's Consolidated Laws of New York, art. 7, §167. annotated, as amended.

In the Reich cases a jury in the Supreme Court of New York rendered a verdict on June 9, 1965 and a written judgment was filed on June 16, 1965. It is not disputed that under the New York statute there is an appeal period of thirty days from the entry of the judgment and that the appeal period would have expired on July 16, 1965.

The instant cases were heard before a justice of the superior court on the pleadings, interrogatories, an agreed statement of facts, and a stipulation between the parties. The plaintiffs did not challenge the validity of the payment of $9,000 out of the coverage of $20,000 to the Gibauds and Petrone. The only question was whether defendant properly paid $10,000 to the Reichs on the basis of the judgments entered in New York. The plaintiffs contended in the superior court, as they do now, that they had a right to share pro rata with the Reichs in the balance of $11,000 of the policy proceeds. They base this contention on their argument that the judgments in their cases and those in the Reich cases ripened into final judgments on the same day, July 16, 1965. It appears that the Reich judgments[2] were entered in New York on June 16, 1965, but defendant paid the Reichs $10,000 on November 11, 1965.

After the hearing the trial justice entered a written decision. After noting that the parties agreed that New York law applied, he held that the judgments in the plaintiffs' cases were entered in Rhode Island on July 16, 1965 and at that time, and not before, plaintiffs had a right to sue defendant and defendant had a duty to pay. He also held that the Reich judgments were final on June 16, 1965, with execution subject to a stay order if an appeal was taken before July 16, 1965; that since no appeal was taken so

---

[2]Paragraph (6) in the Agreed Statement of Facts states that "The specific date or dates upon which judgments actually entered in the Reich cases and the Clougherty cases are not agreed to but are left up to the decision of the Court."

that no stay order was ever entered, the Reichs had a cause of action against defendant on June 16, 1965 upon which execution could issue; that defendant was required by the terms of its policy to pay when judgment was entered against the insured on June 16, 1965; and that the payment of $10,000 to the Reichs was a valid payment and a discharge pro tanto of its liability under the policy. Accordingly, he decided that plaintiffs could recover their proportionate share of $1,000 from defendant Royal Indemnity Co., plus costs; and he also entered a decision for Royal Insurance Co., Ltd. for its costs. Thereafter judgments based thereon were duly entered.

It is undisputed that under the Rhode Island statutes in force at that time, G. L. 1956, §9-21-1 the Clougherty judgments became final on July 16, 1965 because no appeal had been taken therefrom by defendant. Neither is there any dispute that under New York law, priority among automobile tort claimants is determined by the date of the judgment and that the "first in time, first in right" principle applies whether the priority is by way of judgment or by way of settlement. See *David* v. *Bauman,* 24 Misc.2d 67, 68, 196 N.Y.S.2d 746, 748, where the court said:

> "Case law going back to 1935 in New York and even earlier elsewhere makes clear that the right granted by subdivision 7 of section 167 of the Insurance Law does not alter the 'first in time, first in right' principle whether the priority is by way of judgment or by way of settlement."

The narrow question raised by these appeals is whether the Reich judgments became final on June 16, 1965, the day they were filed, or on July 16, 1965, the date on which the time for appeal expired, no appeal having been taken nor stay of execution requested.

The plaintiffs contend that under the policy provisions[3]

---

[3]"1 Coverage A—Bodily Injury Liability

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness

defendant was under no duty to pay claimants until final judgment; that under the New York rule, priority by date of judgment means priority by date of final judgment; that under the New York statute[4] judgments do not become final until the time to appeal therefrom has expired; and that

---

or disease, including death at any time resulting therefrom, sustained by any person caused by accident and arising out of the ownership, maintenance or use of the automobile.
"***

"9. Action Against Company. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability."

[4]7B McKinney's Consolidated Laws of New York Annotated, R.5016, §§5230, 5513, 5519.

"Rule 5016. Entry of judgment
(a) What constitutes entry. A judgment is entered when, after it has been signed by the clerk, it is filed by him."

"§5230. Executions
"***

(b) Issuance. At any time before a judgment is satisfied or vacated, an execution may be issued ***."

"§5513. Time to take appeal, cross-appeal or move for permission to appeal
(a) Time to take appeal as of right. An appeal as of right must be taken within thirty days after service upon the appellant of a copy of the judgment or order appealed from and written notice of its entry, except that when the appellant has entered the judgment or order or served notice of its entry his appeal must be taken within thirty days after he did either."

"§5519. Stay of enforcement
(a) Stay without court order. Service upon the adverse party of a notice of appeal or an affidavit of intention to move for permission to appeal stays all proceedings to enforce the judgment or order appealed from pending the appeal or determination on the motion for permission to appeal where ***."

on this record the Reich judgments did not become final until July 16, 1965, the date on which the time to appeal had expired.

The plaintiffs further argue that, applying this law, the New York courts, if confronted with the question, would hold that if two judgments are equal in time they are equal in right and would share pro rata. They argue that when defendant paid the sum of $10,000 to the Reichs on November 11, 1965, it unlawfully gave them priority over plaintiffs whose judgments had equal status.

The defendant argues that the Reich judgments were entered before the Clougherty judgments and therefore the Reichs were entitled to prior payment. In our opinion defendant's contention has merit. We reach this conclusion based on the language of the policy and the law of New York.

The policy states that no action shall lie against the company "* * * until the amount of the insured's obligation to pay shall have been finally determined * * * by judgment against the insured after actual trial * * *." In order to determine the result in this case, it is necessary to ascertain when the amount of the insured's obligation is "* * * finally determined * * * by judgment * * *."

This phrase has been subject to many various constructions. In *Tucker* v. *State Automobile Mut. Ins. Co.*, 280 Ky. 212, 132 S.W.2d 935, appellant Tucker successfully procured a judgment against Saxton in an action arising out of a collision. Saxton thereupon appealed to the Court of Appeals but did not supersede the entire amount of the judgment. Execution was returned with the notation "No property found," and appellant filed a petition in equity in the nature of a bill of discovery. In this action it was discovered that Saxton carried an insurance policy with appellee. Thereupon, appellant amended his petition by setting up the policy and making appellee a party defendant and alleging his right to proceed against appellee. The

appellee filed a plea in abatement alleging that the case was still pending in the Court of Appeals. From the decision sustaining the plea in abatement appellant appealed.

In affirming the lower court judgment the Supreme Court said, at 280 Ky. 212 at 215, 132 S.W.2d at 937:

> "* * * It is our view that the term 'final judgment' or 'finally determined by judgment' means a judgment which shall have become final by expiration of time for appeal or by affirmance on appeal. Such terms, in the sense used in the policy, do not come within the category of 'final orders' or 'final judgments' of a trial court, under the rules of practice and procedure, from which an appeal may be prosecuted to the appellate court."

See *Joyce* v. *Central Surety & Ins. Corp.*, (Mo. App.) 321 S.W.2d 272, and *General Acc. Fire & Life Assur. Corp.* v. *Clark*, 34 F.2d 833.

*Tucker, supra,* cites "to the same effect," *Schroeder* v. *Columbia Casualty Co.*, 126 Misc. 205, 213 N.Y.S. 649, in which the court construed section 109 of the Insurance Law (added by Laws 1917, c. 524, as amended by Laws 1924, c. 639) which allows a direct action against the insurer in the event that execution against the insured is returned unsatisfied due to the insolvency of the insured. The court in *Schroeder, supra,* held that the liability "* * * imposed by law * * *," as stated in the policy, is not fixed until the termination of an appeal by the judgment debtor.

The *Schroeder* decision was soundly criticized in *Materazzi* v. *Commercial Casualty Ins. Co.*, 157 Misc. 365, 283 N.Y.S. 942. However, *Schroeder, Materazzi,* both *supra,* and *Weiss* v. *New Jersey Fidelity & Plate Glass Ins. Co.*, 131 Misc. 836, 228 N.Y.S. 314, are inapposite here because they deal with special statutes granting to an injured party the right to proceed directly against the insurer in the event that execution against the insured is returned unsatisfied due to the insolvency of the insured, and, the language of

the policies involved substantially differs from that of the case at bar.

However, the courts of New York have construed policy provisions substantially similar to the one here involved. In *Pape* v. *Red Cab Mut. Casualty Co.*, 128 Misc. 456, 219 N.Y.S. 135, plaintiff recovered a judgment for personal injuries against a taxicab operator who filed a notice of appeal but did not file a supersedeas bond. Pending the appeal, plaintiff brought an action against the insurer pursuant to a direct action statute, sec. 282-b of the Highway Law (added by Laws 1922, c. 612, amended by Laws 1924, c. 360, §12, chapter 413, §1 and Laws 1925, c. 315) which requires the filing of a bond by a carrier for hire of passengers to cover "any judgment" recovered against such carriers. The "no action" clause in the policy required the "* * * amount of loss shall have been fixed * * * by a final determination of the litigation after trial of the issue * * *." The insurer contended that due to the pendency of an appeal in the principal action, there is a lack of a "final determination." In rejecting the insured's contention the court said at 128 Misc. 457, 219 N.Y.S. 136:

> "Considering the obligation under the policy, apart from the language of the statute, the insurer was liable upon a 'final determination of the litigation after trial of the issue.' The expression is synonymous with final judgment. * * *
> "The express language of the clause in the policy would seem to indicate that it was not intended to fix the insurer's liability upon the determination of the litigation beyond all possibilities of appeal. * * *"

Although this statement was not the holding of the case, it is dicta of the first water indicating the position of the courts of New York in construing the policy involved in the case at bar.

*Weiss, supra,* cited by plaintiff to support his contention that a judgment in New York is not final until the time for appeal has expired, is not determinative in the instant

case due to another reason. The policy there contained a provision wherein the insurer agreed "* * * to indemnify * * * against loss from the liability *imposed by law upon* the assured for damages on account of bodily injuries." The court in *Weiss, supra,* at 131 Misc. 841, 228 N.Y.S. 322, said:

> "* * * A liability is imposed by law when by proper judicial process and procedure a judgment has been entered against the assured which has become a final judgment because the time to appeal therefrom has expired. (*Schroeder* v. *Columbia Cas. Co.* * * * *Dean v. Marschall,* 90 Hun, 335.) A judgment entered upon the verdict of a jury taken on an inquest is just as much a final judgment as one entered upon the verdict of a jury after a litigated trial. The judgment upon the inquest becomes final one year from the time it is docketed. (Civ. Prac. Act, §108.)"

The court based its holding on *Schroeder, supra,* which, as stated above, was strongly criticized in *Materazzi, supra.*

Neither is *Judy Negligee, Inc.* v. *Portnoy,* 194 Misc. 508, 89 N.Y.S.2d 656 (City Ct. of New York), dispositive in attempting to ascertain the proper construction of a "no action" clause. In this case plaintiff sued defendant bailee, the insured, for loss of merchandise. The insured moved to serve a third-party complaint on his insurer. The insurance policy provided that no action shall lie against the company "* * * unless it shall be brought to recover for loss and/or expense, the amount of which shall have been definitely determined (a) by final judgment after trial of the issue in an action against the Assured * * *." In granting the defendant's motion the court said that the purpose of the clause was to free the insurer from liability until a final judgment was procured against the insured. However the court did not discuss, in any way, when a judgment becomes final. The holding of the court that, in the facts of the case, the insurer may be joined in an action if it is "* * * safe against the possibility that there will be recovery against it in the absence of and before judgment is

allowed against the assured," 89 N.Y.S.2d at 658, in no way derogates from this opinion because the court did not discuss the time at which a judgment becomes final.

In more recent cases the term "finally determined" by judgment has been construed to mean that "* * * the insured's liability shall be considered to have been finally determined after trial by the entry of the judgment against him, regardless of whether an appeal is subsequently taken." *Travelers Ins. Co.* v. *Pinkerton-Hays Lumber Co.* (Fla. App.), 120 So.2d 448. There, the injured party started garnishment proceedings against the insurer based on a judgment procured against the insured from which the insured appealed. The "no action" clause was identical to that of the case at bar. The court held that the garnishment proceedings were not premature despite the pendency of an appeal by the insured. See *General Accident Fire & Life Assur. Corp.* v. *Harris* (Fla. App.), 117 So.2d 44, and *Larson* v. *Dauphin Realty Co.*, 228 F. Supp. 952. (Connecting case at 224 F. Supp. 989, modified on other grounds 340 F.2d 180.)

On the strength of *Pape, supra,* reinforced by the above three cases, we believe that the language of the policy does not require the termination of an appeal period in order for a judgment to gain finality.

We must next examine the law of New York to determine when a judgment becomes final. C.P.L.R., §5011, 7B McKinney states that "A judgment is the determination of the rights of the parties in an action or special proceeding and may be either interlocutory or final." As to when a judgment is final in New York, the matter is settled in *In the matter of Bailey,* 265 App. Div. 758, 40 N.Y.S.2d 746, in which the court construed the term "final judgment" as it appears in section 2 of chapter 350 of Laws of 1941. The court said, 265 App. Div. 761, 40 N.Y.S.2d 749:

"The expression 'final judgment' has a well-defined meaning in the Civil Practice Act. It designates that

judgment of the court of original jurisdiction by which the rights of the parties are adjudicated and determined. The finality of the judgment so entered is not affected by the pendency of an appeal. Section 472 of the Civil Practice Act defines a judgment as 'the determination of the rights of the parties in an action, and may be either interlocutory or final.' There are numerous other sections of the Civil Practice Act which imply the same interpretation of the words 'final judgment.' In this State in the absence of a stay a judgment *entered* in the Supreme Court has complete finality. Execution may be entered thereon even though an appeal is pending. The judgment may be satisfied while the appeal is pending. Though there may be a reversal and another final judgment, nevertheless, the first judgment was a final judgment in the action." (italics ours)

See *Concourse Super Service Station, Inc.* v. *Price,* 33 Misc.2d 503, 226 N.Y.S.2d 651.

For the reasons stated it is our opinion that the decision of the trial justice is correct.

The judgment is affirmed.

MR. JUSTICE KELLEHER, concurring. In concurring, I am constrained to set forth my reasons for so doing. Although I would prefer the result achieved in the dissent, I am unable to accept the fundamental premises upon which it is based.

In his dissent, Brother Joslin declares that there is no clear and definite statement by a New York court as to how the clause[1] of the policy in issue should be interpreted; second, he asserts that in the absence of "a clear New York mandate," or when in his opinion the law of New York is "in doubt," he is at liberty to decide what the law of New York should be on this matter, regardless of how he surmises the "New York courts may ultimately decide," by

---

[1] "*** *the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial* or by written agreement of the insured, the claimant and the company." (italics ours)

referring to our own decisions and the decisions of other jurisdictions. I disagree with him on both points.

Whenever there is a case, such as this one, in which it is undisputed and agreed that the law of a sister state applies, the trial court was, and we on appeal are required to take judicial notice of all statutes and judicial decisions of that state relevant to the issue presented under our Uniform Judicial Notice of Foreign Law Act, (G. L. 1956) §§9-19-2 to 9-19-8; *Virginia Ave. Coal Co.* v. *Bailey,* 185 Tenn. 242, 205 S.W.2d 11.[2]

I believe that we have in *Pape* v. *Red Cab Mut. Casualty Co., supra,* a decisive and definite statement from a New York court as to how the clause in question here should be interpreted. The supreme court of New York in *Pape* spoke clearly as to the interpretation it would give to an insurance policy clause virtually identical with the clause we are asked to construe on this appeal.

It is true that *Pape* was decided by an intermediate court of appeals and not the state's highest appellate tribunal, but I feel that we should accept the decision of the intermediate court of review as expressing the law of New York in the absence of any conflicting decision by a higher court or a court of coordinate jurisdiction of that state. *Moscov* v. *Mutual Life Ins. Co.,* 387 Ill. 378, 56 N.E.2d 399, at 404.[3] Further I am not persuaded that *Dean* v. *Marschall,* 90 Hun 335, 35 N.Y.S. 724, *Weiss* v. *New Jersey Fidelity & Plate Glass Co., supra,* and *Materazzi* v. *Commercial Casualty Ins. Co., supra,* dilute the *Pape* opinion to a degree that it cannot be described as decisive and cogent authority upon which the majority could base its findings. Like the majority, I feel the *Dean, Weiss* and *Materazzi* cases are distinguishable on the language of the clauses sought to

---

[2]For a comprehensive compilation of authorities interpreting this Uniform Act in other jurisdictions see 9A U.L.A. p. 550, and 23 A.L.R.2d 1437.

[3]See also *West* v. *American Tel. & Tel. Co..* 311 U. S. 223, 61 S. Ct. 179, 85 L.Ed. 139.

be construed, and in my opinion are not equatable with the present policy clause under examination; accordingly these cases do not represent, as Brother Joslin suggests, conflicting decisions in New York on the issue before us. My consideration of this case leads me to the conclusion that the *Pape* decision, never having been overruled in New York, is a precedent which we should follow here.

As to Brother Joslin's second point, I likewise disagree. If we are to concede for argument purposes that *Pape* does not represent a decisive and precise exposition of a New York court's construction of the clause before us, I am unable to subscribe to the principle of conflicts expounded in his dissent.

As I understand my Brother Joslin in his dissenting opinion, if the courts of a sister state, whose law is to control, have not decided the particular issue in question with sufficient lucidity and decisiveness, we are at liberty to construe the meaning of the contested policy clause as we believe the law ought to be, relying primarily on the law contained in our own decisions and secondarily on the law found in decisions of other jurisdictions, regardless of whatever inclinations we may entertain as to how the courts of the sister jurisdiction may ultimately rule on the matter. Even if we had no decision by the courts of the locus on the precise issue in dispute, I believe a better approach to the problem would be for us to exert every effort to discover any indicia as to how the courts of that foreign jurisdiction would rule and thereafter decide the issue as we believe it would be resolved by the courts of the locus.

I believe the principle enunciated by Brother Joslin in his dissent is neither sound in theory or practice. When we are presented with an issue to be governed by foreign law, we are serving as a forum of convenience for the parties, and should have for our purpose the giving of just effectuation to the rights and obligations created by the

650

laws of the appropriate locus, as well as ensuring them of an orderly, fair and expeditious hearing of their case. Our aim should be to incorporate the law of the locus into our decision so as to homologize fairly any and all claims and defenses which each party would enjoy under the laws of the governing jurisdiction. In short, we should examine the laws of the locus and, using them as a model, seek to achieve the same result as would likely be reached by its courts, provided of course the application of the locus law would not contravene any strong public policy of the forum or "* * * interfere with the efficient operation of the forum's judicial system."[4] In so doing, we are recognizing and satisfying, whenever possible, the expectancies of the parties as well as protecting innocent litigants from having their legal rights and claims, valid under the laws of one forum, from being disfranchised by the deft or fortuitous selection of an alternate forum by an adversary litigant.

In my opinion, the litigant's goal of uniformity of treatment should similarly motivate us regardless of whether we can perceive a clear mandate from the courts of the locus. When we are confronted with the situation of having to decide an issue by reference to law from another jurisdiction, I believe we should strive to determine, through a diligent and serious analysis of the law of the locus as it is expressed in its statutes and judicial decisions, the result that would be attained by the courts of that place and then decide our case in accordance with our findings relevant to the foreign law. In effect, I am suggesting that in conflict cases, we adopt essentially the same process as the federal courts do when their jurisdiction is invoked to rule on a

[4]See Morgan, Edmund M., "Choice Of Law Governing Proof," 58 Harv. L. Rev. 153 at 194, "No one doubts the validity of the general objective of modern enlightened courts in the field of conflict of laws, namely, the attainment through the courts of the forum of the same result which would have been secured through the courts of the locus." See also, Morgan, Edmund M., "Rules of Evidence-Substantive Or Procedural," 10 Vand. L.Rev. 467, at 470, for a similar expression of this principle of conflicts law.

question of law unsettled by the courts of the state in which they preside. Just as under the mandate of *Erie R.R.* v. *Tompkins,* 304 U. S. 64, 58 S. Ct. 817, 82 L. Ed. 1188,[5] federal courts examine, interpret, and if necessary extrapolate the law of a state as to questions never before precisely answered by state courts, we should similarly act in our efforts to discover the law of other jurisdictions in conflict cases.[6]

To adopt the criteria of *Erie* herein is to preserve the purposes and be consistent with the objectives which embrace the entire law of conflicts. We should not grant to ourselves freedom to decide what the law of a foreign jurisdiction should be on a particular issue but should, instead, take cognizance of any apparent indication as to how the judiciary of another state would rule if given the opportunity to do so.[7] While I do not advocate that we should engage in making judicial hunches, it is my opinion that a discernible trend or policy which a court in another state may follow should be recognized and given effect. Under Mr. Justice Joslin's rule, I do not believe this would be possible.

MR. JUSTICE JOSLIN, with whom Chief Justice Roberts joins, dissenting. I am unable to agree. A brief recapitulation of the essential facts should be helpful in furnishing a frame of reference for my reasons.

Negligence actions were commenced in this state and in the state of New York by different plaintiffs against the

---

[5]See Wyzanski, Jr., Judge Charles E., "A Trial Judge's Freedom and Responsibility," 65 Harv. L. Rev. 1281, 1299-1301. See also *Brewster v. Boston Herald-Traveler Corp.,* 188 F. Supp. 565 at 569, decided by Judge Wyzanski for an illustration as to the approach taken by federal judges when examining state law under the *Erie* rule.

[6]See Sedler, Robert Allen, "The Erie Outcome Test As A Guide To Substance And Procedure In The Conflict of Laws," 37 N.Y.U.L. Rev. 813.

[7]See also *H. & J. Gross, Inc.* v. *Fraser,* 140 Mont. 95, 99, 368 P.2d 163, 165, where it was held that the forum will make an "independent determination as to what is the correct foreign law."

defendant's[1] insureds for damages resulting from a single automobile collision. Jury verdicts for the claimants were rendered in the New York proceedings on June 9, 1965, and in those in this state on June 30, 1965. In New York, written judgments were filed on June 16, 1965, and under the laws of that state executions, although issuable upon entry of those judgments, would have been automatically stayed had appeals been claimed on or before July 16, 1965; in the Rhode Island cases judgments under the law then in effect[2] entered on the expiration of the appeal period, viz., July 16, 1965 as of June 30, 1965, and only thereafter would executions have been available. Appeals, the taking of which would have operated as stays in both states, were claimed in neither.

On July 16, 1965, the day of the expiration of the appeal period in each of the states, only $11,000 was available under the policy to satisfy both the New York judgments of $10,000 and those in this state of approximately $18,000. While the parties agree that the principle "first in time, first in right" applies when, as here, policy limits are not sufficient to satisfy multiple judgments, they disagree on the time when the suits in the respective states were finally determined. The defendant has paid the New York judgments and now has only $1,000 available under the policy with which to satisfy those entered in the courts of this state. It contends that the New York judgments were first in point of time, that they are entitled to priority in payment, and that plaintiffs' recovery should be limited to

---

[1] All references to the defendant are to Royal Indemnity Co.

[2] Under Rhode Island practice as it existed under G. L. 1965, §§9-23-3, 9-24-17, prior to their amendment by P. L. 1965, chap. 55, secs. 40 and 41 respectively (effective January 10, 1966) judgment entered seven days after a decision on a motion for new trial, provided, however, that the filing of a notice of intention to prosecute a bill of exceptions and the depositing of estimated cost of a transcript would stay the judgment. In these cases motions for new trials had been filed and were denied on July 9, 1965.

$1,000. The plaintiffs, on the other hand, argue that the suits in both New York and Rhode Island were finally determined on July 16, 1965, that no preference in payment should be given to the New York judgments, and that the $11,000 available on July 16, 1965, should have been apportioned among the judgment creditors.

Which of the two contentions should be adopted depends on the provisions and stipulations of the insurance policy. It establishes the nature and extent of the respective rights and liabilities and fixes the time when they arise; it places an injured person in the shoes of the insured and permits him to sue the insurer directly; it requires as a precondition to any such suit that "* * * *the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial* or by written agreement of the insured, the claimant and the company." (italics ours)

The provision which allows direct action by an injured party against the insurer is commonly referred to as a "no-action clause." In substantially identical form it has several times and in different circumstances been interpreted. There is, however, no agreement among the courts as to its meaning or what it contemplates.[3] Some of the cases hold that an insured's liability is *finally determined* upon entry of judgment notwithstanding that it may be appealed; others that there can be no *final determination,* even though a judgment may have entered, until either the appeal period has expired or the appeal, if taken, has been determined. The parties agree that New York law controls in the interpretation of this policy, but there is disagreement in the court on whether there is a clear New York mandate.

I agree, as of course I must, with my Brother Kelleher that a proper respect for comity demands that absent an

---

[3]The cases are collected at 8 Blashfield, Automobile Law & Practice, Sec. 344.3, p. 405 et seq; 12 Couch, Insurance 2d 45:857, p. 731; 8 Appleman, Insurance Law & Practice, §4854, pp. 264-69.

adjudication by its highest court, the pronouncements of the intermediate courts of review in New York stating its law should be heeded. *Commissioner* v. *Bosch,* 387 U. S. 456, 87 S. Ct. 1776, 18 L.Ed. 2d 886. That principle, while it applies when the pronouncements of such courts in a sister state are in harmony, is inapposite when they are in conflict and its law therefore in doubt.[4] In the latter situation, instead of speculating on what the New York courts may ultimately decide, I am guided first by our own decisions and then by general law and the decisions of other states. *Aetna Casualty & Surety Co.* v. *Osborn McMillan Elevator Co.,* 26 Wis. 2d 292, 132 N.W.2d 510.

The disagreement between my Brother Kelleher and me is not on the regard which is due *Pape* v. *Red Cab Mut. Casualty Co.,* 128 Misc. 456, 219 N.Y.S. 135. On that we agree. Where we differ is on the holding in that case and on whether or not there are conflicting New York decisions. On those questions, my Brother Paolino and I, although otherwise at odds, are in agreement that the New York decisions are in conflict.

In *Pape* the court was concerned with giving meaning to an indemnity insurance policy which had been issued to a taxicab operator pursuant to the New York Highway law which required him to be insured for liability under a policy conditioned upon "* * * the payment of any judgment recovered * * *." Interpreting a stipulation substantially identical with the one here in issue, but within the context of a statutory mandate, rather than as if it stood alone without the interpretive benefit and assistance furnished by that enactment, the court hinged its decision to the

---

[4]In *Moscov* v. *Mutual Life Ins. Co.,* 387 Ill. 378, 56 N.E.2d 399, relied on by my Brother Kelleher, this exception to the general rule is recognized at p. 389, 56 N.E.2d 404, where the court says that the decision of the intermediate appellate court will be accepted "*** in the absence of any conflicting decision by another appellate court of co-ordinate jurisdiction ***."

legislative directive and allowed the suit against the insurer even though the litigation against the taxicab operator had not been determined beyond all possibilities of appeal. *Pape*[5] considered in the light of the statute does not unqualifiedly stand for the principle that a policy stipulation which fixes an insurer's liability upon "a final determination of the litigation after trial" must be interpreted as permitting suit against the insurer prior to the determination of the appeal period; it holds only that such a suit may be permitted where the insurer has so stipulated pursuant to a statutory mandate requiring that the policy provide that the insurer shall be liable "for the payment of any judgment recovered."

*Pape*, moreover, is not the only expression by the appellate term of the supreme court concerning the true meaning of a stipulation that an insurer shall be liable upon a "final determination of the litigation after trial." That is an expression, the *Pape* court said, which is synonymous with "final judgment." The latter expression, as was made clear in *Dean* v. *Marschall*, 90 Hun 335, 35 N.Y.S. 724, means "finally settling the rights of the parties to the action beyond all appeal." The *Dean* conclusion being in my judgment in conflict, *Pape* has neither the decisiveness nor the cogency which my Brother Kelleher claims for it, and is therefore not controlling.

---

[5]*Schroeder* v. *Columbia Casualty Co.*, 126 Misc. 205, 213 N.Y.S. 649, and *Weiss* v. *New Jersey Fidelity & Plate Glass Ins. Co.*, 131 Misc. 836, 228 N.Y.S. 314, both decided by the trial term of the supreme court, involved policies which stipulated that the insurer would indemnify the insured against loss from "liability imposed by law." In each case the court held that *liability is imposed by law* only when the expiration of the appeal period judgment has become final. The court in *Pape* citing Schroeder says that the holding there is not inconsistent with its own ruling, and thereby clearly recognizing its own reliance on the statute. It said, moreover, at 219 N.Y.S. 137: "We find nothing *** inconsistent with these views, because that decision [Schroeder] was under section 109 of the Insurance Law *** which imposes a liability upon the insurer radically different from that under section 282-b of the Highway Law."

In my judgment the crux of the problem lies not in *Pape,* but in ascertaining what was contemplated by the policy stipulation in this case that no action may be brought unless the insured's liability has been "finally determined * * * by judgment." ·This language has a colloquial as well as a technical meaning and the two are poles apart. *Pape,* curiously enough, articulates the difference between the two, 128 Misc. 456 at 457, 219 N.Y.S. 135 at 136,[6] as follows:

> "Considering the obligation under the policy, apart from the language of the statute, the insurer was liable upon a 'final determination of the litigation after trial of the issue.' The expression is synonymous with final judgment. The latter, as is shown in *Dean* v. *Marschall* (90 Hun 335, 338) is susceptible of two significations: 'One which in a strict legal sense is its true meaning, viz., a determination of the rights of the parties after a trial, whether such is the subject of review or not; and the other, its colloquial use or signification, which makes it synonymous with decisive, or a judgment that cannot be appealed from and which is perfectly conclusive upon the matter adjudicated.' "

Adopting the *Pape* distinction, and it is certainly a valid one, it is clear that the language taken in its *technical* sense makes the case turn on whether the judgments in New York after trial were final; it is equally clear, moreover, that if these doubtful words are given their colloquial or everyday meaning the case will hinge, not on when the New York judgments become final, but on when the litigation was conclusively disposed of and decisively settled.

It is in the area of what the policy contemplates that I find myself in basic disagreement with the majority. Equating *final determination by judgment* with *final judgment,* they give the language its legal or technical meaning and

---

[6]A similar distinction between the "technical" and the "popular" meanings of what constitutes a "final judgment" within the meaning of an automobile liability policy is made in *General Accident Fire & Life Assur. Corp.* v. *Clark,* 34 F.2d 833.

they conclude that a judgment of a trial court in favor of an injured party, even though appealable, gives rise forthwith upon its entry to a claim under the policy which the insurer must pay. Since the pertinent language is susceptible to two meanings, I reject the precise or technical interpretation of the majority, *Joslin* v. *Aetna Life Ins. Co.*, 67 R. I. 261, 21 A.2d 550, and give the words their plain, ordinary, usual and popular meanings. *Wolf* v. *Prudential Ins. Co.*, 62 R. I. 270, 4 A.2d 897; *Princess Ring Co.* v. *Home Ins. Co.*, 52 R. I. 481, 161 A. 292; *Nagy* v. *Lumbermens Mutual Cas. Co.*, 100 R. I. 734, 219 A.2d 396. Viewed in this light, there can be no doubt that the policy contemplated that the insureds' obligations on the New York judgments would not be *finally determined* until nothing remained open to the possibility of further dispute and until by reason of the expiration of the appeal period all matters in controversy had been finally set to rest.

Still another reason for my conclusion that the doubtful language cannot have the meaning that the majority have given it lies in the stipulation in the policy that the insurer shall pay "all premiums on appeal bonds."[7] That provision must be read contextually with the no-action clause and each, so far as possible, must be afforded a meaning and an effect. *Crook* v. *Kalamazoo Sales & Service Inc.*, 82 R. I. 387, 110 A.2d 266; *Brady* v. *Norwich Union Fire Ins. Soc'y*, 47 R. I. 416, 133 A. 799; *Princess Ring Co.* v. *Home Ins. Co., supra; Nagy* v. *Lumbermens Mutual Cas. Co., supra.*

To give both provisions the required effect, however, is

---

[7]Paragraph II(b) (1) of the policy reads:

"pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, *all premiums on appeal bonds required in any such defended suit,* the cost of bail bonds required of the insured in the event of accident or traffic law violation during the policy period, not to exceed $100 per bail bond, but without any obligation to apply for or furnish any such bonds ***." (italics ours)

practically impossible if the majority's interpretation of the no-action clause is adopted. The appeal bond provision presupposes that there will be appeals and provides that the insurer shall pay the premium on the bond without which the appeal could not be maintained, whereas the no-action clause, as interpreted by the majority, dampens the likelihood of an appeal because of its insistence that a judgment be satisfied even if appealed. The inconsistency is obvious, and in my judgment is so destructive of the meaning and purpose of the appeal bond stipulation as to provide an additional reason for rejecting the majority view.

Finally, the majority's interpretation is unacceptable because it makes it possible for an injured party to maintain an action to recover the amount of a judgment even though that judgment may later be set aside on appeal. An interpretation which permits such a result, while not "the absurdity" which the court in *Roberts* v. *Central Mutual Ins. Co.*, 285 Ill. App. 408, 2 N.E.2d 132, terms it, is so lacking in realism as to justify its rejection for that reason alone. Two cases, each relied on by the majority, will suffice to demonstrate that even the courts which accept the majority's interpretation of the no-action clause depart from it when faced with the illogical results which its application produces.

In both *Travelers Ins. Co.* v. *Pinkerton-Hays Lumber Co.*, Fla. App., 120 So.2d 448, and *General Accident Fire & Life Assur. Corp.* v. *Harris*, Fla. App., 117 So.2d 44, the factual situation concerned an injured party who obtained a summary judgment in a garnishment proceeding against the insurer following recovery of a judgment in a negligence action against an insured. Thereafter, the insurance company appealed from both judgments. When the judgment in the negligence case was reversed, the incongruity which adherence to the majority interpretation would have produced became apparent. To follow that interpretation

would have required that the summary judgment be sustained and would have demanded that the insurer pay a judgment notwithstanding that on appeal it had been reversed. Realizing that such a result was intolerable, the court in each case, although paying lip service to the interpretation that finality attaches upon entry of judgment, reversed the earlier summary judgment. The explanation given in *General Accident Fire & Life Assur. Corp.* v. *Harris, supra,* points up what I have referred to as the "incongruity" of the majority's position. The court there said at page 45:

> "We, therefore, find ourselves in a position on these appeals in which we cannot find that the trial court committed error in entering the summary judgments in garnishment, yet we are convinced that it would amount to a grave miscarriage of justice to allow those judgments to stand under the circumstances. Inasmuch as those judgments are based wholly upon the judgments which this Court has reversed, justice under the law requires that we remand these causes to the trial court with directions forthwith to dismiss these garnishment proceedings."

For the reasons indicated, I am unable to agree with the majority. An interpretation which ties final determination to expiration of the appeal period can be consistently applied and lies within the contemplation of the policy, whereas one which links it to entry of judgment in a trial court is incapable of consistent application and does not coincide with the intention of the parties to the insurance contract. I would, therefore, reverse and order a proration between the New York and Rhode Island judgment creditors of the fund available on July 16, 1965.

*Higgins, Cavanagh & Cooney, Kenneth P. Borden,* for plaintiffs.

*Francis V. Reynolds, Bernard W. Boyer,* for defendant.