WILLIAMSON *v.* INZER

No. 41608 December 5, 1960 125 So. 2d 77

*Martin V. B. Miller, Gerald Adams,* Meridian; *Adams, Long & Adams,* Tupelo, for appellant.

*Lumpkin, Holland & Ray,* Tupelo, for appellee.

GILLESPIE, J.

Harold G. Williamson, appellant, plaintiff below, sued Jack L. Mabus, Jim Inzer and Wilbur C. Inzer for personal injuries arising out of an automobile-truck collision. The declaration alleged that a truck driven by Mabus was negligently driven against the rear of Wil-

liamsons vehicle; that Mabus was operating the truck for and on behalf of Jim Inzer and Wilbur C. Inzer as their employee. When plaintiff rested his case the trial court sustained a motion to exclude the evidence as to Wilbur C. Inzer, and the jury was instructed accordingly. The case proceeded to a conclusion and the jury found for plaintiff against Mabus and Jim Inzer, neither of whom appealed. Williamson appealed to this Court and assigned as error the action of the trial court in directing a verdict in favor of Wilbur C. Inzer.

The trial court granted the directed verdict on the ground that plaintiff failed to prove Mabus was the servant of Wilbur C. Inzer.

 █ When at the conclusion of plaintiff's case a motion is made to exclude the evidence and direct a verdict for defendant, the court must look solely to the testimony in behalf of plaintiff and accept that testimony as true; and if the facts testified to, along with reasonable inferences which could be drawn therefrom, would support a verdict for plaintiff, the directed verdict should not be given. █ And it is necessary to keep in mind that when such motion is made the question is not where lies the weight or overwhelming weight of the evidence, for the testimony must be considered in the light most favorable to the party against whom the motion is made. Buntyn v. Robinson, 233 Miss. 360, 102 So. 2d 126.

The evidence showed that Wilbur C. Inzer, appellee, had been engaged for a number of years in the wholesale oil business as a distributor of petroleum products. He also owned a number of service stations. Until about a year before the accident here involved, Jim Inzer had been a truck driver in the employ of appellee on a weekly salary. About August 1956, Jim Inzer began operating a service station located adjacent to but in a separate building from the main building housing the Service Oil Company, the name under which appellee operated his

business. After Jim Inzer took over the operation of the service station the receipts of the service station were picked up daily by appellee's bookkeeper and deposited in the bank account of Service Oil Company, the bank account of appellee. The expenses of operating the service station were paid out of the Service Oil Company bank account. Jim Inzer was paid $50 per week from this account. Mabus, who was on business for the service station when the accident in question occurred, was paid by checks drawn on the Service Oil Company bank account, except that he was sometimes paid in cash from the cash register and a slip recording such fact was made. Appellee owned the real property on which is situated the service station, together with the gasoline pumps, storage tanks, air compressor and grease lift. All the foregoing facts were shown by the testimony of Jim Inzer and appellee, questioned as adverse witnesses, and are substantially without dispute. In addition, the proof showed that Jim Inzer had no service station property assessed to him and that the service station property was assessed to appellee.

In his testimony appellee stated that since some indefinite time within the past year or more Jim Inzer operated the service station "as a dealer," but he could not remember when Jim Inzer took over the station. Appellee did not state any of the facts relative to Jim Inzer becoming the "dealer" at said service station, nor what the arrangements were between him and Jim Inzer.

Jim Inzer, in his testimony, was not sure when he took over operation of the service station, but thought it was about a year before the accident here involved. He stated that appellee had sold him the service station "equipment" but failed to state what equipment he bought or what he agreed to pay for it. Apparently, it was not the gasoline pumps, etc., appellee said he owned. Jim Inzer stated that he had a verbal lease with

appellee but none of the terms thereof were mentioned. He further testified that he used Service Oil Company's bank account as his bank; that he turned in all his receipts and all his expenses together with a $50 per week payment to him were paid out from the Service Oil Company bank account on his orders and any amount remaining therein to his credit was applied on what he owed appellee for the service station equipment. He testified that appellee had no control over Mabus. Jim Inzer also stated that he was the owner of the truck Mabus was operating when appellant was injured.

We are of the opinion that when viewed in the light of the foregoing rule, the evidence and the reasonable inferences which could be drawn therefrom would support a finding that Mabus was appellee's servant. When one owns physical property comprising a service station, receives the daily receipts therefrom and deposits the same in his bank account, and the expenses of the business are paid from his bank account, it is reasonable to infer that he owns and controls the business and the servants of the enterprise are his servants. The jury would have a right to reject the vague and indefinite testimony of Jim Inzer with reference to his alleged purchase and lease, and the statement of appellee that Jim Inzer was a ''dealer''.

The learned trial judge should have overruled the motion for a directed verdict.

Reversed and remanded.

*Hall, P.J.,* and *Lee, Kyle* and *Arrington, JJ.,* concur.