MAGUIRE *v.* CARMICHAEL, EXECUTOR, et al.

No. 41782          April 10, 1961          128 So. 2d 581

*Pershing B. Sullivan, George D. Maxey,* Laurel, for appellant.

*Welch, Gibbes & Graves,* Laurel, for appellees.

LEE, P. J.

William D. Carmichael, nominated as Executor in the last will and testament of D. E. R. Merchant, who died in Jones County on October 16, 1959, filed a petition for

probate of the will in solemn form. Mrs. Mabel C. Maguire, a niece, and the only heir of the decedent, contested the petition. An issue of *devisavit vel non* as to testamentary capacity and undue influence of the testator was made up, and a jury was empaneled to try the issue. At the conclusion of the evidence, the court granted a peremptory instruction for the proponent on both issues. From the decree entered, Mrs. Maguire appealed.

The instrument was signed, sealed, published and declared by the testator on August 21, 1959, in the presence of witnesses and in the manner provided by law. A bequest to Mrs. Maguire consisted of $2,500, the personal effects and automobile of the decedent, and eighty acres of land. There were several bequests to other individuals, and a parcel of land was also devised to the Ellisville Methodist Church. Mr. Merchant owned about 1,500 acres of land. The timber on the land, with the exception of that on the land under the previous bequests mentioned, was devised to Jones County Junior College, Ellisville, Mississippi; Millsaps College, Jackson, Mississippi; John Brown University, Siloam Springs, Arkansas; and Ashbury College, Wilmore, Kentucky; share and share alike, to be cut and removed within ten years, and under certain restrictions and limitations; but the land itself, subject to the gifts of timber, was devised to a nephew by marriage, Douglas Taylor.

The two subscribing witnesses, and the attorney who prepared the will, testified that they remembered the occasion. They described what occurred, and expressed the opinion that the testator realized what he was doing and what he was signing, and that he had the mental capacity to do so. At the same time, that is, August 21, 1959, he also executed a general power of attorney for Douglas Taylor to act for him in connection with his property. Many documents, including copies of deeds, checks, etc. executed by Mr. Merchant during the year of 1958 and up to within a few days of his death were

introduced in evidence. The evidence for the proponent tended to make out a strong case for the will.

It appeared that Mrs. Maguire, and Mrs. Kate Merchant Randall, a first cousin of the decedent, lived in Compton, California, and that there was a genuine affection between him and them. He often visited them in California and they visited him in Ellisville. On June 1, 1959, he wrote them a letter in which he advised that he was suffering from a malady of a serious nature (an enlargement in the chest—a blown up artery), and indicated that he would like for them "to get out here right away." They came to Mississippi promptly, arriving on June 10th. Mrs. Randall said that, from the time they arrived "He just seemed to have made a complete change in some way." Mrs. Maguire's little boy shot some firecrackers, and Mr. Merchant said "The boy came all this way to bomb a dying man." She said that, on August 21, 1959, the same day that Mr. Milton Weems and Mr. Allums and Mr. Knight, the attorney and the witnesses, came to the house concerning the papers, he was having quite a bad day; that he did not know where he was, and that he asked her just where he was. She did not think that he was competent to know what he was signing or to transact business at that time. Several witnesses, who repeatedly had conversations and experiences with the decedent during the months of July and August of that year, expressed the opinion that he was not competent to attend to business. Mrs. Martha Elizabeth Creel testified that she saw the testator every day or every other day after he returned from a trip to California, and, in her opinion, he was not competent to attend to business.

Elmer Creel, who was a part-time nurse for the decedent, testified that Mr. Merchant, after he returned from California, began to see doctors. The witness saw him every day and he related a number of incidents tending to show that Mr. Merchant did not realize what he was doing. The following are mentioned: Talking by Mr. Mer-

chant of his intention to purchase a house for the witness and then forgetting all about the matter. The decedent would be talking, as he thought, to his brother, and yet the brother had been dead for many years. At night, he thought he was riding freight trains. He was also telling Theodore Stevenson how to survey land. Seeming to think that he owned the place, he wanted the witness to go to the Strickland home and tell them to move. He also wanted the witness to bury iron stakes around some of Wofford Collins' pecan trees. The witness saw Mr. Merchant on the afternoon of August 21, 1959, and, as he was leaving, lawyer Weems, who drew the will, came up to the house. A short time later, after Creel had eaten supper, he went back to Mrs. McGrew's home, where Mr. Merchant was staying. At that time Mr. Merchant wanted to know the names of the men who had just been there. Creel found out from Mrs. McGrew that Lonnie Knight and ''Slim'' Allums had been there, and when he told him the names, Mr. Merchant remarked ''He is a big old ugly devil, ain't he?'' Mr. Merchant was talking to his brother and had nightmares all night long. He also said that the papers were fixed up so that he and his wife (who had been dead for many years) could take a vacation. When the witness asked where they were going, Mr. Merchant said ''I don't know. We are just going some place.'' The witness Creel was of the opinion that, after about February Mr. Merchant was not able or competent to do anything or transact business. He said that the testator had always told him that everything that he had would go to Mrs. Maguire, his niece, at his death. He said that Mr. Merchant, after signing the papers, moved into a back room and never came out of it again except to go to the hospital.

Douglas Taylor, a lawyer, in his early fifties, was employed by the U. S. Government and was living in Alexandria, Virginia. Mr. Merchant seemed to have great confidence in him. About August 5, 1959, Taylor

came to Mississippi and was working with Mr. Merchant's property, getting up descriptions and plats. He was present at one time when Mr. Merchant gave the lawyer instructions about drawing the will. The attorney knew of no reason why Taylor had come to Mississippi except for the purpose of platting the land. After his return to Virginia, Mr. Merchant told the lawyer to fix a power of attorney from him to execute to Taylor.

Although the two subscribing witnesses and the attorney testified that, in their opinion, Mr. Merchant had testamentary capacity at the time of the execution of the will, Elmer Creel testified that he saw Mr. Merchant on the same afternoon, immediately before and immediately after the signing of the instrument, and that Mr. Merchant did not know what he was doing and was not able to transact business when he saw him. In this, he was corroborated in part by the evidence of Mrs. Kate Merchant Randall. In Kelker, et al. v. Jordan, 228 Miss. 847, 89 So. 2d 858, where, on a will contest, the witnesses who saw the testator the day before, and on the day after, the execution of the will, and were of the opinion that the testator did not have testamentary capacity, this Court affirmed the decree of the chancery court which overturned the will.

On the movant's request for a peremptory instruction, the court must keep in mind that the evidence for the opposite party must be treated as proving every fact favorable to his case which is established either directly or by reasonable inference. Farish, et al. v. Canton Flying Services, Inc., 214 Miss. 370, 58 So. 2d 915, and authorities there cited. It does not necessarily follow that a party is entitled to a directed verdict even though a verdict for the opposite party might have to be set aside as being contrary to the overwhelming weight of the evidence. Buntyn v. Robinson, 233 Miss. 360, 102 So. 2d 126; Yazoo & M. R. Company v. Pittman, 169 Miss. 667, 153 So. 382; Fore v. Alabama and Vicks-

burg Railway Company, 87 Miss. 211, 39 So. 493. Also it must be kept in mind, when such a motion is made, that the question is not where lies the weight or overwhelming weight of the evidence because it must be considered in the light most favorable to the party against whom the motion is made. Williamson v. Inzer, 239 Miss. 707, 125 So. 2d 77.

The issue should have been submitted to the jury; and, for the error in granting the peremptory instruction, the cause must be reversed and remanded for a new trial.

Reversed and remanded.

*Gillespie, McElroy, Rodgers,* and *Jones, JJ.,* concur.