233 So.2d 110 (1970)
Herbert WILLIAMS and United States Fidelity & Guaranty Company
v.
James A. MORAN.
No. 45662.
Supreme Court of Mississippi.
March 16, 1970.
White & Morse, Gulfport, for appellant.
Norman Breland, Holleman & Necaise, Gulfport, for appellee.
David Cottrell, Jr., and Eaton, Cottrell, Galloway & Lang, Gulfport, for Illinois Cent. R. Co.
RODGERS, Justice.
Appellee, James A. Moran, brought suit in the Circuit Court of Harrison County, Mississippi, against the Illinois Central Railroad and Herbert Williams seeking damages for personal injury arising out of a motor vehicle collision. Appellee recovered *111 a judgment against appellant, Williams, in the sum of $6,200, from which appellant, Williams, appealed without supersedeas to this Court. No recovery against the railroad was allowed by the jury verdict.
After rendition of the judgment above mentioned, appellee brought garnishment proceedings against appellant, United States Fidelity & Guaranty Company, hereafter referred to as U.S.F. & G. Co., alleging that it had issued a policy of insurance in favor of appellant, Herbert Williams, and that the judgment of the court at the trial was an indebtedness within the contemplation of the garnishment statutes, and that, therefore, U.S.F. & G. Co. was indebted to appellant, Williams. U.S.F. & G. Co. answered, denied that it was indebted, but admitted that it had issued its liability policy of insurance to Herbert Williams with a $5,000 limit.
The circuit court ruled that the garnishee-defendant, U.S.F. & G. Co., was indebted to Herbert Williams, and that, therefore, it was subject to garnishment proceedings by appellee, which resulted in the court's judgment that U.S.F. & G. Co. was indebted to appellee, James A. Moran, in the sum of $5,000, plus interest and costs. U.S.F. & G. Co. then filed its supersedeas bond and has attempted to perfect its appeal in this proceeding.
The appellants, U.S.F. & G. Co. and Herbert Williams, did not appeal against Illinois Central Railroad. Appellee, Moran, did request issuance of summons to the railroad by the Clerk of this Court, which was subsequently issued. The Illinois Central Railroad then filed a motion to dismiss as to it in this Court. This motion was sustained on November 7, 1969.
This controversy results from an accident which occurred at approximately 9:20 p.m. on April 25, 1967, in the city of Gulfport, when an automobile driven by Herbert Williams was struck by an Illinois Central Railroad train, with the vehicle driven by Williams subsequently striking the automobile driven by appellee, Moran. The collision occurred at the intersection of the railroad tracks and "Banana Terminal Road" between the east and west piers at the Port of Gulfport. Banana Terminal Road runs east and west and connects the extensions of 27th Avenue and 30th Avenue, north-south thoroughfares in Gulfport. The railroad track runs north and south through Banana Terminal Road. The Illinois Central Railroad train was proceeding northerly, backing up with its cars to the south of it, approaching the Banana Terminal Road from the south prior to the collision.
After the accident, the evidence reflects that the train was positioned so that three-fourths (3/4) of the engine had crossed Banana Terminal Road. Appellee's automobile was found to be on the south side of the road headed in an easterly direction and appellant Williams' automobile was in a north-south direction with the front end of appellant's automobile imbedded in the left rear of appellee's automobile.
The record includes several photographs of the crossing taken in daylight. The appellee called numerous witnesses at the trial. Howard Leroy Hobbs, Chief of Police, picked up the appellee and took him home after the accident. Appellee was complaining of pain in his chest and requested nitroglycerin tablets when he arrived at his home.
Appellee gave his version of the accident. He testified that it was a clear night, that he was travelling down Banana Terminal Road to the east; that there were banana trucks parked along the road on the right-hand side. He stated that he was proceeding at about five to ten miles an hour; that as his car entered upon the track he happened to look up and see the engine approaching him. He backed his car and just as the front end of the car left the track the train struck the Williams car. The impact threw the Williams car against the appellee's car and the appellee immediately developed chest pain. Appellee *112 testified that the bell on the train was not ringing, that the whistle was not blowing, and that there were no lights on the engine.
Herbert Williams, defendant, testified that on the night in question he was operating a 1961 Chevrolet station wagon. Appellant was familiar with Banana Terminal Road and knew that the railroad tracks crossed the road. The night was clear and the road was unlighted. Appellant testified that he had crossed the railroad tracks many times, but that there was no way to see the track until the vehicle was on it. Appellant testified that he was travelling at approximately fifteen (15) miles an hour, that he saw the lights of an oncoming car, and that they suddenly flashed dim and he noticed some sort of "off-maneuvering" and that he focused his attention on this car. He was concerned that the car might cross to his side of the road. He was not aware when he approached the track and was not aware that he was on the track until he had actually gotten upon it. The first time that appellant was aware of the presence of the train was when his vehicle was crossing the track and he looked and saw it. He testified that the train whistle was not blowing, the bell was not ringing, and when his car was struck, the bell started ringing and lights flashed on. Appellant's car was struck by the engine on the left rear. The engine went off the track and the car was still in gear and it continued to run until it struck the Moran vehicle.
When the defendant Williams' motion for a directed verdict was overruled, the railroad offered its evidence. The engineer and switchman, agents of the railroad, were introduced as witnesses and they testified that the railroad engine was equipped with headlights in front and in the rear of the engine and that they were lighted. They testified that the engine was equipped with a legal whistle and a legal bell and that the whistle was blowing and the bell was ringing. They testified that all of the members of the train crew saw the Williams automobile and hollered at the driver. They said that although they were travelling slowly and the engineer put the engine in reverse, it could not be stopped before the collision.
After the railroad rested its defense, the appellant again renewed his motion for a directed verdict. The judge overruled the motion and submitted the case to the jury. The jury returned a verdict in favor of the plaintiff against Herbert Williams for $6,200, but not against the railroad. The defendant made a motion for a new trial and when this motion was overruled he appealed.
Herbert Williams and U.S.F. & G. Co., appellants, assign as errors the following: (1) That the court erred in overruling appellant's motion for a mistrial; (2) that the court erred in overruling appellant's motion for a directed verdict; (3) that the court erred in the garnishment proceeding in holding that U.S.F. & G. Co. was indebted to appellee.
Appellant contends that the statements made by police officer Ferguson, mentioning insurance, were highly prejudicial to appellant, and were grounds for mistrial, and that the trial court erred in overruling appellant's motion for a mistrial.
Appellant also contends that the appellee did not make a prima facie case against him, and therefore, the court erred in overruling appellant's motion for a directed verdict.
Appellant further contends that the court erred in holding that U.S.F. & G. Co. was indebted to appellant and that appellee could bring garnishment proceedings against U.S.F. & G. Co.

I.
Appellant seriously contends that the question of insurance was erroneously injected into the trial; that prejudice resulted; that the trial court should have sustained its motion for a mistrial.
*113 This issue arose as follows: Officer Ferguson, a witness for appellee, who had investigated the scene of the accident, was asked on cross examination by counsel for co-defendant railroad:
"Q. Did you consider the accident of sufficient significance to make some photographs?
"A. Yes, sir. I would say, that at the time the only thing we made it for was insurance, because it was not on city property, it was on state property, and Chief Hobbs told us to work it as an insurance accident and that was all, we couldn't make any charges."
At this point a motion was made by counsel for the defendant Williams that the jury be retired from the courtroom. The jury was thereupon retired from the courtroom and the following proceedings were had in the absence of the jury:
"BY COUNSEL FOR THE APPELLANT:
"Now comes the defendant and moves the court for a mistrial and for grounds would show that the question of insurance has been injected in the trial of the case by the witness Ferguson.
"BY THE COURT:
"This was stated by the witness, really not in response to a question. The interrogator did not, I am sure, expect anything like that to come out. It was a voluntary statement by the witness. He said he was investigating it like an insurance case. He didn't exactly say that there was insurance involved in the case. * * * I don't think we should be so strict about that rule when there is no bad faith involved, either by the attorney or by the witness. Overrule the motion for a mistrial."
This Court has passed upon this question in several cases with reference to inadvertent replies made by witnesses. The case of City of Jackson v. Reed, 233 Miss. 280, 102 So.2d 342 (1958), controls the case at bar. Reed held that an unsolicited, inadvertent, and voluntary statement of a witness, including a reference to insurance, during the trial of a personal injury action, was not prejudicial error under the circumstances, and was not ground for declaring a mistrial. After cataloging numerous Mississippi cases reviewed by this Court where the subject of insurance was injected, Reed particularly dealt with the effect of unsolicited, inadvertent, or voluntary answers theretofore undiscussed in the Mississippi cases. The Court cited 4 A.L.R.2d 784 (1949) on the topic as follows, 102 So.2d at page 350:
"* * * By weight of authority, if counsel propounds a question which calls for proper evidence, the fact that an irresponsive or inadvertent answer includes a reference to insurance will not be ground for declaring a mistrial."
The Court, through Justice Lee, then set out the following rule in Mississippi:
"It is a serious matter to set aside the verdict of a jury and the solemn judgment based thereon. Except for extraordinary circumstances, which have effected a miscarriage of justice, an appellate court should be reluctant to nullify such judgment unless it is clear that one of the parties was responsible for the error, or aided and abetted therein, and that such error was prejudicial. The learned trial judge, who was familiar with all of the circumstances, and who, perhaps, was in better position to sense prejudice, if any, than anyone else, refused to grant a mistrial. The motion for a new trial brought into review the completed case at which time this question recurred because it was specifically assigned as a ground. The court overruled that motion, thereby again holding that the answer of the witness was not sufficient to entitle the appellant to a new trial. On the face of the record this Court can neither say that the answer was prejudicial, nor that the trial judge should have granted the motion *114 for a mistrial." (233 Miss. at 301, 102 So.2d at 351)
Judge Gillespie, speaking for this Court in a later case concerning this problem, Copiah Dairies, Inc. v. Addkison, 247 Miss. 327, 153 So.2d 689 (1963), stated:
"Appellant assigns as error the failure of the trial court to grant a mistrial in connection with two occasions during the trial when reference was made to the `adjuster', once by appellee and once by a witness. Appellant contends that the effect of these references was to inform the jury that the case was being defended by an insurance company. The control of such matters rests largely within the sound discretion of the trial court and we are unable to say that he committed reversible error in this regard. * * *" (247 Miss. at 39, 153 So.2d at 694)

II.
We are of the opinion that the trial judge acted properly in overruling the motion for a directed verdict at the close of plaintiff's case.
The basic rule of law controlling this point was well stated in Williamson v. Inzer, 239 Miss. 707, 125 So.2d 77 (1960):
"When at the conclusion of plaintiff's case a motion is made to exclude the evidence and direct a verdict for defendant, the court must look solely to the testimony in behalf of plaintiff and accept that testimony as true; and if the facts testified to, along with reasonable inferences which could be drawn therefrom, would support a verdict for plaintiff, the directed verdict should not be given. And it is necessary to keep in mind that when such motion is made the question is not where lies the weight or overwhelming weight of the evidence, for the testimony must be considered in the light most favorable to the party against whom the motion is made. Buntyn v. Robinson, 233 Miss. 360, 102 So.2d 126." (239 Miss. at 709, 125 So.2d at 78)
Among numerous other authorities for this rule are New Orleans and Northeastern Railroad Company v. Weary, 217 So.2d 274, 275 (Miss. 1968); Hill v. Stewart, 209 So.2d 809 (Miss. 1968); Holifield v. Nester Chevrolet Company, 207 So.2d 636 (Miss. 1968).
When viewed in the light of the foregoing rule, construing the testimony favorable to the plaintiff as true, the evidence and the reasonable inferences which could be drawn therefrom would support a finding that appellant failed to keep a proper lookout, which was the proximate cause of the accident, and which would support a verdict for plaintiff, appellee. Appellant, Herbert Williams, was called as an adverse witness by the appellee, and his testimony permits the reasonable inference that he failed to keep a proper lookout. He admitted that he was thinking about the car (the Moran car) as he approached the tracks. Williams also stated that the first time he saw the train was when he was crossing the track.
As far as the renewal of the motion at the conclusion of the trial is concerned, the testimony of the railroad's witnesses tends to corroborate the inference that the proximate cause of the accident was Williams' failure to keep a proper lookout.
The lower court's refusal to direct a verdict for appellant, Herbert Williams, was not erroneous.

III.
The appellant further assigns as error that the trial court erred in the garnishment proceedings in holding that U.S.F. & G. Co. was indebted to appellee. Appellant, U.S.F. & G. Co., contends that its liability under the insurance policy issued by it to appellant Williams will not be "finally determined" within the meaning of the "no-action" clause of the policy pending appeal to this Court and this Court's disposition of the case in favor of appellee.
*115 The policy in this case contained the usual "no-action" clause. It says:
"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after the actual trial or by written agreement of the insured, the claimant and the company."
The crucial part of this clause to be construed is: "* * * shall have been finally determined either by judgment against the insured after actual trial. * * *"
There appears to be a conflict of authority as to whether or not within the contemplation of such a "no-action" clause a judgment is final where it is still subject to an appeal. 159 A.L.R. 774 (1945); 125 A.L.R. 755 (1940); 44 Am.Jur.2d Insurance § 1417 (1969); 8 Appleman, Insurance Law and Practice § 4854 (1962); Couch on Insurance 2d § 45:857 (1964).
Although there is a number of cases holding that the judgment is not final within the meaning of such a "no-action" clause until the expiration of the time for appeal, or disposition of the appeal by the appellate court, there is other authority to the effect that the judgment is final within the meaning of such a clause although there is a right of appeal therefrom. Couch on Insurance 2d § 45:857 (1964).
It has been held that, while an insurer is generally not liable while an appeal is still pending, this result will not follow where no supersedeas bond is filed. 44 Am.Jur.2d Insurance § 1417 (1969); 8 Appleman, Insurance Law and Practice § 4854 (Supp. 1969); Couch on Insurance 2d § 45:858 (1964).
In the case at bar, appellant did not file a supersedeas bond on appeal. In a Florida case, practically identical in all material respects with the case at bar, the Florida court held that under an automobile liability policy providing that no action would lie against the insurer until the amount of obligation had been finally determined by a judgment after actual trial, the insurer's liability accrued upon the entry of judgment against the insured in the injury action regardless of the fact that an appeal was taken by the insured, and the insurer becomes liable to the plaintiff judgment creditor in garnishment proceedings. Conley v. Singleton, 171 So.2d 65 (Fla.App. 1965). To the same effect is Clougherty v. Royal Insurance Co., 102 R.I. 636, 232 A.2d 610 (1967).
In the more recent cases the term "finally determined * * * by judgment against the insured after actual trial" has been construed to mean that the insured's liability shall be considered to have been finally determined after trial by the entry of a judgment against him, regardless of the pendency of an appeal by the insured. Clougherty v. Royal Insurance Co., 102 R.I. 636, 232 A.2d 610 (1967).
The express language of the clause to be construed would seem to indicate finality of the judgment "after actual trial." Further, the existing laws of the state are part of a policy of insurance issued therein. Commercial Casualty Insurance Company v. Skinner, 190 Miss. 533, 1 So.2d 225 (1941).
There are several Mississippi Code sections which are applicable in determining when a judgment is final in this state.
The applicable part of Section 1547, Mississippi Code 1942 Annotated (1956), is as follows:
"* * * And in all actions where the sum due does not so appear, and in all actions sounding in damages, if the defendant do not plead, interlocutory judgments may be taken, on which writs of inquiry shall be awarded, which may be executed at the same term either by the jurors attending court or by the judge, at the option of the plaintiff. And after a writ of inquiry shall be executed, and *116 judgment rendered thereon by the court, the same shall not be set aside unless good cause be shown therefor on oath; and in such case the defendant shall plead immediately, and the plaintiff shall not thereby be delayed of his trial."
Section 1147, Mississippi Code 1942 Annotated (1956), is in the following language:
"An appeal may be taken to the Supreme Court from any final judgment of a circuit court in a civil case, not being a judgment by confession or from any final decree of the chancery court, not being by consent, by any of the parties or legal representatives of such parties; but such appeal shall operate as a supersedeas only when the party applying for the same shall comply with the terms hereinafter prescribed; and in no case shall such appeal be held to vacate the judgment or decree."
Section 1899, Mississippi Code 1942 Annotated (1956), requires the clerk to issue execution after judgment in the circuit court.
From the foregoing Code sections, and the many cases collected under these sections, it is apparent to us that the judgment in favor of the appellee, James A. Moran, was a final judgment and was, under the terms of the policy, "finally determined by judgment against the insured," Herbert Williams.
Section 1906, Mississippi Code 1942 Annotated (1956), permits garnishments to be issued on judgments and unless a supersedeas bond is given in compliance with Section 1163, Mississippi Code 1942 Annotated (1956), a suggestion of indebtedness may be filed and a writ of garnishment issued in accordance with Section 2783, Mississippi Code 1942 Annotated (1956).
We are, therefore, of the opinion that the garnishment was properly issued and that the judgment against the U.S.F. & G. Co. was properly entered by the court. The garnishee, however, is only liable for the amount of its insurance contract plus interest and damages.
A judgment will be entered in this Court against Herbert Williams in favor of James A. Moran for the full amount of the trial court judgment in the sum of $6,200 plus interest and damages. A judgment will also be entered here against U.S.F. & G. Co. and the surety on its supersedeas bond, The Maryland Casualty Company, in favor of James A. Moran for the sum of $5,000 together with legal interest from the date of the judgment against the garnishee in the trial court and statutory damages upon the amount of the final judgment in the circuit court.
Payment made by the garnishee, U.S.F. & G. Co., will be credited on the judgment against Herbert Williams.
The judgments of the trial court against both appellants are hereby affirmed.
Affirmed.
ETHRIDGE, C.J., and BRADY, PATTERSON and SMITH, JJ., concur.