(No. 27824.—

THEODORE MOSCOV *vs.* THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellee.—(ALBERT MOSCOV *et al.*, Appellants.)

*Opinion filed May 16, 1944—Rehearing denied September 18, 1944.*

REGINALD A. BARNETT, of Chicago, for appellants.

WINSTON, STRAWN & SHAW, of Chicago, (LOUIS W. DAWSON, of New York, GEORGE B. CHRISTENSEN, and ED-

WARD J. WENDROW, both of Chicago, of counsel,) for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Theodore Moscov, by Nathan Moscov, his next friend, brought an action in the circuit court of Cook county against the defendant, the Mutual Life Insurance Company of New York, to recover disability benefits and premiums paid subsequent to plaintiff's total and permanent disability. Defendant answered the complaint, disclaiming liability. Prior to the trial, plaintiff died and his children were substituted as parties plaintiff. At the close of plaintiffs' evidence, defendant's motion for a directed verdict was granted. Upon appeal, the Appellate Court for the First District affirmed the judgment rendered in favor of defendant and against plaintiffs. *Moscov* v. *Mutual Life Ins. Co. of New York*, 320 Ill. App. 281. We have granted plaintiffs' petition for leave to appeal, and the record is here for a further review.

From the pleadings and the evidence adduced it appears that on January 12, 1928, the defendant executed a policy for $2000, with a double indemnity clause, insuring the life of Theodore Moscov and in which his six children, the present plaintiffs, were named beneficiaries. So far as is relevant, section 3 of the policy, captioned "Benefits in Event of Total and Permanent Disability before Age 60," after defining total disability and permanent disability, declares:

"When Benefits become Effective.—If, before attaining the age of sixty years and while no premium on this Policy is in default, the Insured shall furnish to the Company due proof that he is totally and permanently disabled, as defined above, the Company will grant the following benefits during the remaining life-time of the Insured so long as such disability continues.

"Benefits. (a) Increasing Income.—The Company will pay a monthly income to the Insured of the amount stated on the first page hereof ($10 per $1,000 face amount of Policy,) beginning upon receipt of due proof of such disability and increasing after sixty consecutive monthly payments have been made to one and

one-half times such amount and after sixty further consecutive monthly payments have been made to twice such amount at which it shall remain while total and permanent disability continues.

"(b) Waiver of Premium.—The Company will also, after receipt of such due proof, waive payment of such premium as it thereafter becomes due during such disability."

On the back of the policy is a rider, "Supplementary Benefits to Section Entitled 'Benefits in Event of Total and Permanent Disability before Age 60,'" which, so far as pertinent, reads:

"Benefits if Proof Delayed and no Premium in Default.— If while no premium is in default, the proof furnished the Company under the section providing for 'Benefits in Event of Total and Permanent Disability before Age 60' is such as to entitle the Insured to the Disability Benefits provided for therein, and if due proof is also furnished the Company that such disability has been continuous since its beginning, the Company will:

(a) Begin the monthly income payments provided for in such section as of the end of the first completed month of such disability if earlier than the date of receipt of such proof instead of as of the date of receipt of such proof, and,

(b) Return any premium due after the beginning of such disability which has been paid during the continuance thereof."

A certificate of a physician, a resident of East Pittsburgh, Pennsylvania, dated March 18, 1938, states that the insured had been suffering from paralysis agitans and, to his knowledge, had been unable to follow his usual or any other work since August 11, 1933. From the testimony of the Pennsylvania physician and of Dr. Samuel Levine, a son-in-law of the insured, it appears that paralysis agitans is commonly known as Parkinson's disease. In 1938, demand was made upon defendant to pay the disability benefits beginning August 11, 1933, and to return the premiums paid since the date last named. This defendant declined to do, asserting it was not liable under the policy for the reason that the insured became sixty years of age on May 15, 1934, and proof of total and permanent disability was not submitted prior to his attainment of age sixty. October 31, 1939, this action was instituted.

When the policy was issued Theodore Moscov was a resident of Canonsburg, Pennsylvania. The policy is a Pennsylvania contract and, the parties agree, is controlled by Pennsylvania law. Plaintiffs make the contention, among others, that submission of proof of disability before age sixty is not a condition precedent to the recovery of disability benefits and the waiver of premiums. We take judicial notice of the Pennsylvania law, under section 1 of the Uniform Judicial Notice of Foreign Law Act. (Ill. Rev. Stat. 1943, chap. 51, par. 48g.) In plain and unambiguous language, section 3 of the policy prescribes that "the Insured shall furnish to the Company due proof that he is totally and permanently disabled" before attaining the age of sixty years and while no premiums are in default. Proof to the company before the insured becomes sixty years of age of total and permanent disability is a condition precedent to the insured's right to disability benefits provided in the policy. (*Jenkins* v. *Mutual Life Ins. Co.* 130 Pa. Super. 442, 198 Atl. 486.) As the court observed in the case cited: "The clause is so clear and unambiguous that no resort to the decisions of other jurisdictions or policy contracts containing dissimilar provisions is necessary or of advantage."

Reasons for requiring proof of disability before age sixty suggest themselves. As pointedly observed in *Lyford* v. *New England Mut. Life Ins. Co.* 122 Pa. Super. 16, 184 Atl. 469: "The clause, making the furnishing of due proof of total and permanent disability a condition precedent to liability, is a proper, reasonable, and salutary one to prevent fraud and deception being practiced on the insurer. The necessity for some such provision is recognized in *Courson* v. *New York Life Ins. Co.* 295 Pa. 518, *Lucas* v. *John Hancock Mutual Life Ins. Co.* 116 Pa. Super. 298, 176 Atl. 514, and *Perlman* v. *New York Life Ins. Co.* 105 Pa. Super. 413, 161 Atl. 752. Without it the company might be called on to pay claims four years old as in the *Lucas*

*case,* or even twenty-five years old, as suggested in *Wick* v. *Western Union Life Ins. Co.* 104 Wash. 129, 175 Pac. 953, at a time when it had become impossible to test the truth and justice of the claim." And, in *Lucas* v. *John Hancock Mutual Life Ins. Co.* 116 Pa. Super, 298, 176 Atl. 514, the court said: "The very purpose of the due proof clause is that prompt notice may be given, in order that the company may have an opportunity to make a fair investigation of the claim. The unfairness of plaintiff's position is best established by the present claim, in asserting a disability that had existed for more than four years prior to his filing proofs of his disability."

Urging that section 3 and the rider are inconsistent, plaintiffs invoke the familiar rule that ambiguous provisions or equivocal expressions whereby an insurer seeks to limit its liability will be construed most strongly against the insurer and liberally in favor of the insured. (*Lenkutis* v. *New York Life Ins. Co.* 374 Ill. 136.) This canon of construction, however, does not authorize a distortion of language or the exercise of inventive powers for the creation of an ambiguity where none exists. (*Crosse* v. *Knights of Honor,* 254 Ill. 80.) Again, contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous their terms are to be taken and understood in their plain, ordinary, and popular sense. (*United States Fidelity and Guaranty Co.* v. *Guenther,* 281 U. S. 34; *Chicago Nat. Life Ins. Co.* v. *Carbaugh,* 337 Ill. 483; *Kimbell Trust and Savings Bank* v. *Hartford Accident and Indemnity Co.* 333 Ill. 318; *Crosse* v. *Knights of Honor,* 254 Ill. 80.) The parties to an insurance contract may incorporate in it such provisions, not in violation of law, as they choose; and it is the duty of the courts to construe and enforce the contract as made. Manifestly, courts have neither the right nor the power to make a new contract for the parties. Since the policy,

without the rider, required submission of proof before age sixty as a condition precedent, the narrow question presented for decision is whether the rider has changed or eliminated the requirement prescribed by section 3.

Recourse to the policy discloses the purpose of the rider in its title, namely, supplementary benefits to those described in the third section. The language of the rider fixes the same time limit within which proof of permanent and total disability must be filed as prescribed in the body of the policy, namely, before age sixty. The provision for supplementary benefits does not change or eliminate the time limitation set forth in section 3 but, instead, incorporates this limitation by direct reference. The first paragraph of the rider provides that the benefits described shall accrue only if the proof furnished the insurer under section 3 "is such as to entitle the Insured to the Disability Benefits provided for therein." In short, the rider ordains, as does section 3, that proof of disability must be submitted prior to the attainment of the age of sixty in order for an insured to become entitled to disability benefits. It is true that clauses (a) and (b) of the rider modify clauses (a) and (b) under the paragraphs entitled "Benefits" and "Waiver of Premium," respectively, in section 3. These changes or modifications do not aid plaintiffs. Section 3, standing alone, provides that the company will pay monthly income benefits and waive premiums commencing upon the receipt of proof of disability. The obvious purpose of clauses (a) and (b) of the rider is to extend the benefits of clauses (a) and (b) of section 3 by providing that the monthly income payments described in section 3 shall commence as of the end of the first completed month of disability if earlier than the date of receipt of such proof instead of as of the date of receipt of such proof and, further, to return any premium due after the beginning of disability which has been paid during its continuance. The inconsistencies to which reference has been made in no-

way affect the requirement of proof of disability prior to age sixty. No question of construction or interpretation is discernible with respect to the provision concerning proof of disability prior to age sixty. A question of construction or interpretation arises only when plaintiffs attempt by a process of strained construction to fasten liability upon defendant contrary to the plain and unambiguous provisions of a contract entered into by parties legally competent to make it. If plaintiffs' contention were sustained, a new contract would be made for the parties and a liability created where none existed. We decline to render ambiguous the simple language of a contract singularly free from ambiguity in the respects challenged.

*Birnbaum* v. *Mutual Life Ins. Co. of New York*, 170 Misc. 83, 9 N. Y. Supp. 2d 928, construes an identical policy and rider of the defendant. Observing that the meaning of the rider and section 3 is clear and unambiguous, the court said: "Instead of benefits beginning as of the date when proof of claim is filed, the benefits are to commence at the end of the first completed month of the disability, and not as of the day when proof of claim is received. The purpose of this rider was to give the insured more time to determine whether the disability was of a permanent nature, and any delay, in the filing of the proof of claim, would thus not penalize an honest claimant. I do not think there is anything in the rider which destroys the requirement that proof of claim, in any event, must be presented before the disabled person reaches the age of 60 years, and I do not think the average insured person, reading the policy, could take the rider to mean that he may delay filing his proof of claim, until after he has reached the age of 60 years. Such a construction would alter the entire nature of the contract."

It is true, as plaintiffs point out, that this decision is by a *nisi-prius* court. The fact remains that the issue presented for decision is the same as here and that the logic

of the opinion is inescapable. Furthermore, the Appellate Term of the Supreme Court of New York has affirmed the judgment (New York Law Journal, June 28, 1939,) and denied leave to appeal to the Appellate Division. New York Law Journal, August 24, 1939.

Plaintiffs place particular reliance upon *Mutual Life Ins. Co. of New York* v. *Drummond,* 111 Fed. 2d 282, and *Mutual Life Ins. Co. of New York* v. *Heilbronner,* 116 Fed. 2d 855. Defendant's rider, identical with the one added to Theodore Moscov's policy, was involved in each of these cases, but neither case decides, or assumes to decide, whether proof of disability must be filed before the insurer attains the age of sixty. In the *Drummond case,* decided in 1940, the plaintiff was under 30 years of age and, in consequence, there could have been no question concerning failure to file proof of disability before she reached age sixty. We note that the Circuit Court of Appeals for the eight circuit, in the foregoing case, stated that its construction of the disability provisions of the policy found support in the *Birnbaum case,* "where the identical provisions of a similar policy were under consideration." In the second case, plaintiff sought to reinstate four policies issued in 1930 which the insurer claimed had lapsed for nonpayment of premiums in 1935 and 1936. Heilbronner became *totally and permanently* disabled in 1930 when he was forty-three years of age. When the decision was rendered in 1941, he was not over fifty-four years of age. In *New York Life Ins. Co.* v. *Levine,* 138 Fed. 2d 286, cited upon oral argument, the policies in controversy contained no provision, "by way of condition or otherwise, as to the time within which proof of disability had to be filed." The facts in the *Levine case* are far from parallel with the factual situation in the present case.

The remaining contention which requires consideration is that subsequent to August 11, 1933, Theodore Moscov suffered from loss of his mental faculties and, as the com-

plaint charges, "the illness which afflicted him so affected and impaired his mentality that he was thereby prevented from furnishing proof and it was impossible for him to furnish to the defendant due proof of his total and permanent disability before age 60." Construing the evidence in the light plaintiffs deem most favorable to them, namely, that their father was insane on and after August 11, 1933, we consider the contention made. It is the law of Pennsylvania that failure to submit proof of disability before age sixty is not excused by reason of the insured's alleged insanity. (*Farmers Trust Co.* v. *Reliance Life Ins. Co. of Pittsburgh,* 140 Pa. Super. 115, 13 Atl. 2d 111.) In *Courson* v. *New York Life Ins. Co.* 295 Pa. 518, the court held that the furnishing of proof of disability was a condition precedent to a waiver of premiums. The policy provided that "The company, by endorsement hereon, will waive payment of the premiums thereafter becoming due, if the insured, before attaining the age of sixty years and after paying at least one full annual premium and before default in the payment of any subsequent premium shall furnish proof satisfactory to the company that he has become wholly and permanently disabled." The Supreme Court of Pennsylvania held that where the insured becomes disabled by insanity, and without giving notice of such disability, and without furnishing proof satisfactory to the company, continued to pay the premiums for several years until his death, his personal representative cannot recover back from the company the amount of the premiums so paid. The factual distinctions between the *Courson case* and the case at bar are not material. Here, plaintiffs, in addition to seeking a refund of premiums which they assert should have been waived, also claim disability benefits. Defendant's liability in both respects is predicated upon proof of disability. In *Farmers Trust Co.* v. *Reliance Life Ins. Co. of Pittsburgh,* 140 Pa. Super. 115, 13 Atl. 2d 111, the guardian of the insured, an incompetent person, sued

the insurer for disability benefits allegedly due under provisions of a life insurance policy. It made the contention that the insured's mental illness excused him from furnishing proof of his disability. The insurer maintained, on the other hand, that the furnishing of proofs, as required by the policy, was a condition precedent to the waiver of premiums and failure to furnish proof of disability before default in the payment of premiums is not excused by the physical disability or the insanity of the insured. The issue thus made was decided in favor of the insurer and against the beneficiary of the policy. *Farmers Trust Co.* v. *Reliance Ins. Co.* is parallel with the present case upon the question of alleged mental incapacity excusing proof of disability. The Pennsylvania case holds that insanity of the insured does not excuse the failure to furnish proof of total and permanent disability where the insurer, under its policy, agrees to waive premiums and make monthly disability payments if the insured furnishes such proof.

It may well be that the rule announced in the Pennsylvania case is contrary to the weight of authority. (142 A. L. R. 852; 59 A. L. R. 1080; 54 A. L. R. 611; *Mutual Life Ins. Co. of New York* v. *Heilbronner,* 116 Fed. 2d. 855.) Be that as it may, the rule in Pennsylvania is clear, the construction of the policy is governed by Pennsylvania law, and the courts of this State, in construing the policy in controversy, adopt the construction of the Pennsylvania courts. Accordingly, in this case, we construe the policy conformably to the rule which obtains in Pennsylvania, namely, compliance with the provision for notice or proof of disability for purposes of a provision of a life policy for waiver of future premiums or the payment of disability benefits is a condition precedent not excused by the insured's insanity. The annotation, commencing at page 852 of 142 A. L. R., cites both *Courson* v. *New York Life Ins. Co.* 295 Pa. 518, and *Farmers Trust Co.* v. *Reliance Life Ins. Co.* in support of the foregoing statement. Our opin-

ion does not, of course, commit this court to the same construction of like provisions in a policy executed in Illinois.

Plaintiffs also urge that the *Farmers Trust Co. case* is of but little authority because rendered by an intermediate court of review of the commonwealth. *Royal League* v. *Kavanagh,* 233 Ill. 175, invoked by plaintiffs, held that, in advance of its announcement by the Supreme Court of another State, this court cannot assume the common law in the sister State will be declared to be different from the common law as construed in Illinois. The reason for the existence of this rule has been abolished by the Uniform Judicial Notice of Foreign Law Act. (Ill. Rev. Stat. 1943, chap. 51, pars. 48g-48n.) When the reason for a rule disappears the rule should likewise disappear. In *West* v. *American Telephone and Telegraph Co.* 311 U. S. 223; the Supreme Court of the United States said, "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." If *Courson* v. *New York Life Ins. Co.* 295 Pa. 518, be deemed not decisive of the issue made with respect to the question of Theodore Moscov's alleged mental incapacity, we must accept the decision of the intermediate court of review as stating the law of Pennsylvania, in the absence of any conflicting decision by another appellate court of co-ordinate jurisdiction in that commonwealth or by its highest court of review.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

GUNN and SMITH, JJ., dissenting.