TERRY MERRICK *et al.*, Minors, by Lois Merrick, their Mother and Next Friend, *et al.*, Plaintiffs-Appellants, *v.* LEMMIE THOMAS PILGRIM *et al.*, Defendants.—(STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Garnishee-Appellee.)

Third District   No. 75-401

Opinion filed December 29, 1976.

Michael W. Heller, of Peoria, for appellants.

Westervelt, Johnson, Nicoll & Keller, of Peoria (Roger E. Holzgrafe, of counsel), for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Plaintiffs obtained a judgment for $26,500 against defendant L. T. Pilgrim in a personal injury suit arising out of an automobile accident which occurred while Pilgrim was driving a car owned by Roy Starr. Plaintiffs then filed a garnishment proceeding against the owner's insurer, State Farm Mututal Automobile Insurance Company, and, following a bench trial, judgment was entered in favor of State Farm. Plaintiffs appeal.

In 1967 the Executive National Life Insurance Company employed Pilgrim as an insurance salesman. At first he was assigned to work with the company's general agents near the Evanston home office. The territory he worked was limited to Cook, McHenry and Lake Counties. On May 7, 1967, he was assigned to Roy Starr's Murphysboro agency which covered southern Illinois as far north as Alton. Pilgrim was a resident of Memphis, Tennessee, and was being trained to be a general agent in Tennessee when the company expanded into that area. Starr resided in St. Louis, Missouri, and used his Thunderbird automobile for his business travels.

The home office sent the names of "leads" to Starr in St. Louis, and Starr drove Pilgrim around the territory to call on these prospective customers. When Starr learned that he would have to be in Chicago on Thursday and Friday, May 18 and 19, he agreed to let Pilgrim drive Starr's second car, a 1964 Falcon, to make the calls not yet completed. According to Starr, Pilgrim had not previously driven the Falcon. Starr used a map to show Pilgrim the towns he was to visit, all of which were less than 50 miles from Alton, and Pilgrim was to meet Starr in St. Louis on Saturday morning. On Saturday afternoon Pilgrim, while driving Starr's Falcon, was involved in an accident in Peoria while taking Lois Merrick and her children to a church social.

State Farm, Starr's insurer, paid the property damage claim of Stephen Schunk, the other driver involved in the collision, but later denied coverage and did not defend Pilgrim. After the judgment was entered against Pilgrim, plaintiffs brought a garnishment action against State Farm, alleging coverage under the "omnibus clause" of Starr's policy. That clause extended coverage to "any other person while using the owned automobile, provided the operation and the actual use of such automobile are with the permission of the named insured * * * and are within the scope of such permission."

■■ Because Starr's insurance policy was issued in Missouri to a Missouri resident, both parties agree that the law of Missouri governs the legal determination of coverage under the policy. See *Muscov v. Mutual Life Insurance Co.* (1944), 387 Ill. 378, 56 N.E.2d 399.

■■ State Farm denied coverage on the ground that Pilgrim's trip to Peoria constituted a major deviation from the permitted use authorized by Starr. Under the "minor deviation rule" followed by Missouri courts in business use cases, a minor deviation from the permitted use is not sufficient to defeat coverage, but a major deviation in use will exclude the permissive user from protection. *Speidel v. Kellum* (Mo. App. 1960), 340 S.W.2d 200; *Burger Chef Systems, Inc. v. Govro* (8th Cir. Mo. 1969), 407 F.2d 921; Annot. and Supp., 5 A.L.R. 2d 600 (1949); 7 Am. Jur. 2d *Automobile Insurance* §122 (1963).

Plaintiffs argue that Pilgrim believed he had permission to make insurance calls in the Peoria area on Saturday, May 20, 1967; that he was combining business with pleasure because he had previously discussed insurance with Mrs. Merrick; that Starr did not expressly restrict Pilgrim's use of the car to calling on the leads known to Starr; and that any deviation from the permitted use was minor or inconsequential.

■■ After examining all of the evidence in the record, we conclude that the decision of the trial court was not against the manifest weight of the evidence and must be affirmed. There was ample evidence from which the court could conclude that Pilgrim's trip to Peoria was for purely personal reasons and that it was outside the scope of either the implied or express permission for use of the car.

The evidence depositions of Pilgrim and of Don K. Faulkner, vice president of Executive, were introduced into evidence as was a statement of an interview with Starr. We have approved two amendments to the record on appeal to add the evidence depositions to the record. In addition, Starr and his wife testified that Pilgrim had never stayed in the Starr home or been served meals there, contrary to the testimony of Pilgrim. Starr stated that he gave Pilgrim permission to use the car to make 10 or 12 calls in the St. Louis-Alton area and that he warned him not to drive more than necessary to make the calls. Pilgrim was to meet Starr at Starr's home on Saturday morning. Thus Pilgrim's presence in Peoria on Saturday afternoon represented a deviation of more than 100 miles from the territory Pilgrim was to cover. Although Pilgrim gave a different version of his conversation with Starr, the trial court quite properly chose to believe Starr, whose account was corroborated by Faulkner in many respects, and chose not to believe Pilgrim's version of the events. There was also testimony that Pilgrim had told Faulkner that he was in Peoria with his "girl friend" and that he had an accident while driving her car.

Faulkner stated that Pilgrim was working for Starr to receive training in insurance sales and that he had never been assigned to a territory that included the Peoria area.

■■ We thus conclude that the testimony of Starr and Faulkner supported findings that Pilgrim was engaged in a major deviation from the permitted use of Starr's automobile under Missouri law and that he was outside the scope of his employment at the time of the accident.

■■ Plaintiffs also contend that State Farm waived its right to deny coverage to Pilgrim when it paid Schunk's claim against the insured. The general rule has been stated as follows:

> "The insurer cannot, after settling some of the claims growing out of an accident and undertaking the defense of a suit on other claims, withdraw from the defense and cast the burden thereof on the insured on the theory that it had mistaken the nature of its obligation." 7 Am. Jur. 2d *Automobile Insurance* §175 (1963).

In the case at bar, State Farm never undertook the defense of plaintiff's claim against Pilgrim. According to evidence in the record, the settlement of Schunk's claim was made before State Farm's claim agent learned that Missouri law would apply. (Under Illinois law, a deviation from the scope of a permissive use does not preclude coverage. *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333, 297 N.E.2d 163.) Under the circumstances present here, we are not persuaded that a payment to one claimant precluded State Farm from denying liability as to other claimants. *Cf. Lane v. Hartford Fire Insurance Co.*, (E.D. Mo. 1972), 343 F. Supp. 79.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

STOUDER, P. J., and SCOTT, J., concur.