THIRD DIVISION

May 22, 2002 

No. 1-00-3335 

SEARS, ROEBUCK AND ) 

COMPANY, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. )

)

NATIONAL UNION, ) The Honorable ) Julia M. Nowicki

Defendant-Appellee. ) Judge Presiding

PRESIDING JUSTICE HALL delivered the opinion of the court:

On November 19, 1999, Sears, Roebuck & Company (Sears), the insured, filed a three-count complaint for declaratory judgment and other relief seeking a judicial determination as to whether, pursuant to a commercial general liability policy (Policy), its insurer, National Union, had a duty to defend and indemnify it in an underlying lawsuit filed by Crystal D. Bland.  In her complaint, Bland alleged that she was assaulted and raped by Arthur V. Lanier, who was hired to clean her carpets as an employee of Flagship Cleaning Services (Flagship), a Sears licensee.

Count I of Sears’ complaint sought a declaratory judgment that National Union had a duty to defend and indemnify Sears in the Bland lawsuit pursuant to the Policy’s coverage for "bodily injury."  Count II sought a declaratory judgment that, under the Policy, Sears was entitled to "insured contract" coverage.  In count III, Sears sought damages for National Union’s alleged breach of contract for refusing to defend and indemnify Sears in the Bland lawsuit.

On February 17, 2000, Sears filed an amended complaint containing four counts. The amended complaint also gave notice that on December 15, 1999, Sears had reached a settlement agreement in the Bland lawsuit. Count III in the amended complaint now alleged breach of contract only for the failure to indemnify.  The newly added count IV alleged breach of contract for the failure to reimburse defense fees and costs.

On April 19, 2000, National Union filed a motion to dismiss the amended complaint pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code)(735 ILCS 5/2-615 (West 1998)), along with a supporting memorandum of law.   

On June 27, 2000, the circuit court issued a memorandum opinion in which it granted National Union’s motion to dismiss as to count II (declaratory judgment that Sears was entitled to insured contract coverage) and count IV (breach of contract for failure to reimburse fees and costs). However, the court denied the motion to dismiss as to count I (declaratory judgment that National Union had duty to defend and indemnify Sears) and count III (breach of contract for failure to indemnify), where Sears sought coverage for "bodily injury."  The court found that based on the holding in 
Nationwide Mutual Fire Insurance Co. of Ohio v. Pipher
, 140 F.3d 222 (3d Cir. 1998), Bland’s claims alleging negligent conduct on the part of Sears fell within the Policy’s coverage for "bodily injury" and, therefore, National Union could not claim that there was no coverage for Sears’ potential liability. 

On June 28, 2000, the circuit court issued a corrected memorandum opinion stating that its June 27
 memorandum opinion mistakenly indicated that the court had granted National Union’s motion to dismiss count IV.  The court then corrected the error, stating that National Union’s motion to dismiss count IV was denied.

On July 10, 2000, Sears filed a motion for partial summary judgment, contending that the circuit court’s June 27
 and 28
 memorandum opinions were tantamount to a finding that National Union should have defended and indemnified Sears in the Bland lawsuit. 

On July 17, 2000, Sears’ motion for partial summary judgment was entered, but it was continued when National Union filed a motion to reconsider the denial of its motion to dismiss as to counts I, III, and IV of Sears’ amended complaint.

On September 13, 2000, the circuit court entered a memorandum opinion granting National Union’s motion to reconsider, thereby dismissing counts I, III, and IV of Sears’ amended complaint.  The court granted National Union’s motion principally on the ground that it found that the holding in 
Moscov v. Mutual Life Insurance Co. of New York
, 387 Ill. 378, 56 N.E.2d 399 (1944), prevented the court from exercising its discretion to follow the Third Circuit's decision in 
Pipher
.

On September 19, 2000, Sears filed a timely notice of appeal from the September 13, 2000, final order dismissing its amended complaint.  On appeal, Sears argues that: (1) the trial court erred when it determined that, based on the holding in 
Moscov
, the court did not have the discretion to follow the Third Circuit's decision in 
Pipher
; and (2) National Union should have defended Sears in the Bland lawsuit.  For the following reasons we affirm the circuit court’s final order dismissing Sears’ amended complaint. 

FACTUAL BACKGROUND

This declaratory judgment action arose from a lawsuit filed by Bland against Flagship, Sears, and Lanier, a Flagship employee.  Bland’s lawsuit was filed in the circuit court of Prince George’s County, Maryland.  The Bland complaint alleged that she was assaulted and raped by Lanier when he came to her home to clean her carpets.  Bland’s complaint contained 18 counts against Sears.

In the Policy that National Union issued to Flagship, Sears was named as an additional insured.  National Union defended Flagship in the Bland lawsuit and ultimately settled it on behalf of Flagship. However, National Union refused to extend coverage to Sears.

On December 15, 1999, Sears reached a settlement agreement with Bland, fully resolving that underlying litigation.  National Union has refused Sears’ request for reimbursement of its settlement and defense costs, thus giving rise to the present action.

ANALYSIS

Applicable Law

The parties agree that pursuant to the terms of the Policy at issue in this case, Pennsylvania substantive law applies.  However, the parties have cited and relied on the procedural law of Illinois.

Standard of Review

Where a trial court dismisses a complaint under either section 2-615 or section 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 1998)), this court applies a 
de novo
 standard of review.
 
R-Five, Inc. v. Shadeco, Inc.,
 305 Ill. App. 3d 635, 712 N.E.2d 913, 915 (1999).  Additionally, the determination of rights and obligations under an insurance policy is a question of law for the court to determine. 
Crawford Laboratories, Inc. v. St. Paul Insurance Co. of Illinois
, 306 Ill. App. 3d 538, 715 N.E.2d 653, 656 (1999).

I. Illinois Trial Court’s Authority to Exercise its Discretion to Follow Federal Court Decisions in Predicting How a Sister State’s Supreme Court Would Rule on a Matter at Issue  

Sears contends that the trial court erred in holding that under 
Moscov
 the court had no discretion to follow the Third Circuit's decision in 
Pipher
, in determining whether Bland's sexual assault constituted an accidental "occurrence" under the Policy.  Sears maintains that the holdings in 
West v. American Telephone & Telegraph Co.
, 311 U.S. 223, 85 L. Ed. 139, 61 S. Ct. 179 (1940), and 
Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern National Insurance Group
, 750 F.2d 619 (7th Cir. 1984), allow Illinois state courts to rely on persuasive authority, including federal diversity cases such as 
Pipher
, in predicting how a sister state’s supreme court would rule on a particular issue.

In response, National Union contends that the trial court correctly determined that it had no discretion to follow 
Pipher
, because under the Uniform Judicial Notice of Foreign Law Act (Uniform Foreign Law Act) (735 ILCS 5/8-1003 through 8-1008
 (West 1994)), as interpreted by the Illinois Supreme Court in 
Moscov
, an Illinois trial court has no discretion to rely upon a federal diversity case when applying a sister state’s law, if the sister state’s intermediate court has already addressed the matter at issue and there is no controlling decision by that state’s highest court of review.  National Union argues that, therefore, the Pennsylvania Superior Court’s decision in 
Britamco Underwriters, Inc. v. Grzeskiewicz
, 433 Pa. Super. 55, 639 A.2d 1208 (1994), and not 
Pipher
, provides the rule of law to be followed in this case.

Illinois adopted the Uniform Foreign Law Act in 1939. See 
O’Neal v. Caffarello
, 303 Ill. App. 574, 25 N.E.2d 534 (1940).  In 
Cliff v. Pinto, 
74 R.I. 369, 375, 60 A.2d 704, 707 (1948), the court stated that it adopted its version of the Uniform Foreign Law Act to provide a simple method of enabling courts of the forum to ascertain the law of every state, territory and other jurisdiction of the United States.  In 
Strout v. Burgess
, 144 Me. 263, 68 A.2d 241 (1949), the court stated that it adopted its version of the Uniform Foreign Law Act to simplify the method of appropriately bringing to the consideration of the court applicable principles of foreign law and to leave its determination to the court rather than the jury.  In 
Franzen v. Equitable Life Assur. Soc.
, 130 N.J.L. 457, 33 A.2d 599 (1943), the New Jersey Supreme Court stated that apart from the principle of uniformity, it adopted its version of the Uniform Foreign Law Act to achieve certainty in the ascertainment and application of foreign law.

In 
Moscov
, the Illinois Supreme Court held that the Uniform Foreign Law Act along with the reasoning employed by the United States Supreme Court in its application of section 34 of the Judiciary Act of 1789, 28 U.S.C. §725 (1941) in 
West v. American Telephone & Telegraph Co
, 311 U.S. 223, 85 L. Ed. 139, 61 S.Ct. 179 (1940)
(footnote: 1) produced a change where Illinois courts would now give greater weight to the decisions of a sister state’s intermediate court. 
Moscov
, 387 Ill. at 382, 389.  In an action to recover disability benefits under a life insurance policy governed by Pennsylvania law, the 
Moscov
 court held that if no decision of the Pennsylvania Supreme Court was decisive of the issue, an Illinois court must accept the decision of an intermediate court of review as stating the law of Pennsylvania in the absence of any conflicting decision by another appellate court of coordinate jurisdiction in Pennsylvania or by its highest court of review. 
Moscov
, 387 Ill. at 389.

In reaching its decision, the 
Moscov
 court renounced the doctrine set forth in 
Royal League v. Kavanagh
, 233 Ill. 175, 84 N.E. 178 (1908), which held that in advance of an announcement by a sister state’s supreme court, an Illinois court could not assume that a sister state’s common law would be declared different from the common law as construed in Illinois; the 
Moscov
 court found that the reason for this rule’s existence had been abolished by the Uniform Foreign Law Act, adding that when "the reason for a rule disappears the rule should likewise disappear."
 Moscov
, 387 Ill. at 389.

Moscov
 was followed by 
Continental-Midwest Corp. v. Hotel Sherman, Inc.,
 13 Ill. App. 2d 188, 196, 141 N.E.2d 400 (1957), where the court stated that when Illinois state courts are required to ascertain and apply the law of a sister state, Illinois state courts follow the example of federal courts, and in the absence of other convincing reasons (
i.e.,
 persuasive authority), an Illinois state court will accept an intermediate court decision of a sister state as the law of that state, if the decision has not been appealed and is that state’s only decision regarding a particular issue.

Additionally, in Illinois, state courts are not prohibited from utilizing federal court decisions applying state law. See 
In re Consolidated Objections to Tax Levies of School District No. 205
, 306 Ill. App. 3d 1104, 1113, 715 N.E.2d 1212 (1999) (federal court’s interpretation of Illinois law while not binding is persuasive); 
People v. Criss
, 307 Ill. App. 3d 888, 900, 719 N.E.2d 776 (1999) (holding that even though decisions of the United States District Court and the Court of Appeals are not binding on state courts and are no more than persuasive authority, these decisions can provide guidance)

Based on the holdings in 
Moscov
 and 
Continental-Midwest Corp.
 and applying the principles set forth above, this court holds that Illinois state courts have the discretion to rely on persuasive federal diversity decisions in predicting how a sister state’s supreme court would rule on a matter at issue, in the absence of controlling authority from the sister state’s supreme court or intermediate appellate court.

In the present case, since the trial court found that the Pennsylvania Superior Court’s decision in 
Grzeskiewicz 
was controlling Pennsylvania authority, it applied the proper standard and therefore did not err.

II. An Insurer’s Duty to Defend its Insured

Under Pennsylvania law, an insurer’s duty to defend is distinct from, and broader than, its duty to indemnify an insured. 
Aetna Casualty & Surety Co. v. Roe
, 437 Pa. Super. 414, 421, 650 A.2d 94, 98 (1994).  An insurer’s duty to defend its insured is determined by the allegations of the underlying complaint. 
Wilson v. Maryland Casualty Co.
, 377 Pa. 588, 594-95, 105 A.2d 304, 306-07 (1954).  If the factual allegations of the complaint state a claim that potentially falls within the policy’s coverage, then the insurer has a duty to defend. 
Biborosch v. Transamerica Insurance Co.
, 412 Pa. Super. 505, 603 A.2d 1050 (1992).

The duty to defend is triggered even if the complaint against the insured is "groundless, false, or fraudulent." 
Gedeon v. State Farm Mutual Automobile Insurance Co.
, 410 Pa. 55, 58, 188 A.2d 320, 321 (1963).  Where a claim may potentially come within the scope of the policy, an insurer’s refusal to defend its insured is a decision it makes at its own peril, because the duty to defend remains with the insurer until it is clear that the claim has been narrowed to one beyond the terms of the policy. 
Britamco Underwriters, Inc. v. Weiner
, 431 Pa. Super. 276, 282-83, 636 A.2d 649, 651 (1994).  However, if there is no possibility that any of the underlying claims of the complaint could be covered by the policy, then the insurer has no duty to defend. 
Germantown Insurance Co. v. Martin
, 407 Pa. Super. 326, 332-33, 595 A.2d 1172, 1175 (1991).

In order to determine whether a claim may potentially come within the policy’s coverage, the court must ascertain the scope of the coverage and then analyze the allegations in the complaint. 
Grzeskiewicz
, 433 Pa. Super. at 59, 639 A.2d at 1210.  Under Pennsylvania law it is well established that where an insurance policy provides coverage for damages resulting from an "occurrence" (
i.e.,
 an accident), an insurer does not have a duty to defend its insured if the acts complained of are intentional and not accidental. 
Gene’s Restaurant v. Nationwide Insurance Co.
, 519 Pa. 306, 548 A.2d 246 (1988).  However, in cases where the complaint alleges that the conduct causing the harm may have been committed negligently as well as intentionally, courts have held that there is an "occurrence" within the meaning of the policy and the insurer has a duty to defend. 
Weiner
, 431 Pa. Super. at 283, 636 A.2d at 652.

In the instant case, Sears contends that because it was sued for its own alleged negligence in connection with Bland’s sexual assault, coverage existed under the terms of the Policy, notwithstanding the intentional nature of the sexual assault.  Bland’s complaint alleged that Sears failed to conduct a criminal background check of Lanier or, in the alternative, having conducted such a background check still allowed Lanier to enter the homes of customers thereby subjecting them to significant risk of violent crime; failed to adequately supervise Lanier; failed to cause its employees to refrain from assaulting and battering the plaintiff; failed to assure that its employees obeyed the criminal laws of the State of Maryland; and negligently represented that Lanier was trustworthy, trained, qualified, professional, safe, and competent.         

Under the terms of the Policy, National Union agreed to defend and indemnify Sears against all claims for "bodily injury" caused by an "occurrence."  The Policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Therefore, the primary issue is: can intentional conduct, such as sexual assault, ever be interpreted as accidental conduct within the meaning of an occurrence-based insurance policy?  The Pennsylvania Supreme Court in 
Gene’s Restaurant 
and the Pennsylvania Superior Court in 
Grzeskiewicz
 have said that it cannot.

In cases where the underlying complaint alleges that the conduct causing the bodily harm was solely intentional, Pennsylvania courts have found that there was no "occurrence" or "accident" within the meaning of the insurance policy, and therefore the insurer had no duty to defend.  The leading Pennsylvania case regarding this issue is the Pennsylvania Supreme Court case 
Gene’s Restaurant.  
 In 
Gene’s Restaurant
, the restaurant sued its insurer for the insurer’s refusal to defend it against a suit brought by a patron who was assaulted in the restaurant. 
Gene’s Restaurant
, 519 Pa. at 308, 548 A.2d at 246.  The plaintiff’s underlying complaint alleged that while she was a patron in the restaurant, she was willfully and maliciously assaulted.
 Gene’s Restaurant
, 519 Pa. at 308, 548 A.2d at 246.  The court held that the "willful and malicious assault alleged in the complaint is not an accident but rather is an intentional tort. As such, it is not covered by the policy and, therefore, the insurer owed no duty to defend." 
Gene’s Restaurant
, 519 Pa. at 309, 548 A.2d at 247. 

The conclusion reached by the Pennsylvania Supreme Court in 
Gene’s Restaurant
 -- that an assault and battery cannot be characterized as an "occurrence" for insurance coverage purposes -- was extended by the Pennsylvania Superior Court in 
Grzeskiewicz 
to situations where the insured itself is accused of negligence in connection with an intentional tort committed by a third party.  In 
Grzeskiewicz,
 a patron of the insured pub sued the pub for injuries the patron received in an assault by another patron.
 Grzeskiewicz,
 433 Pa. Super. at 57, 639 A.2d at 1209.  The court found that since the underlying complaint alleged that the conduct causing the bodily harm was solely intentional, there was no "occurrence," and thus no duty to defend. 
Grzeskiewicz,
 433 Pa. Super. at 61, 639 A.2d at 1210.  The court also found that allegations and claims that the insured was negligent in failing to prevent the assault did not bring these claims within the policy’s coverage because the policy contained an assault and battery exclusion that specifically excluded claims for negligent failure to prevent an assault and battery.
 Grzeskiewicz,
 433 Pa. Super. at 63, 639 A.2d at 1211.

Sears contends, however, that 
Gene’s Restaurant
 and 
Grzeskiewicz
 do not apply in this case.  Sears argues that
 Grzeskiewicz
 does not apply because even though the court in that case found that the underlying incident did not constitute an "occurrence," the court’s sole ground for denying coverage was the assault and battery exclusion, which is an exclusion that is not relevant in this case.  Sears’ argument must be rejected because a reading of the 
Grzeskiewicz
 case shows that the court denied coverage not only on the ground of the applicability of the assault and battery exclusion but also on the separate and independent ground that the underlying incident was not an accident and, therefore, did not constitute an "occurrence" under the terms of the policy. 
Grzeskiewicz
, 433 Pa. Super. at 61, 639 A.2d at 1210. See also 
Terra Nova Insurance Co. v. North Carolina TED, Inc
., 715 F. Supp. 688, 691-92 (E.D. Pa. 1989) (finding that coverage was excluded on ground of assault and battery exclusion as well as on ground that the assault was not an "occurrence" as defined by the policy)

Sears contends that 
Gene’s Restaurant
 is inapplicable because the underlying complaint in that case contained no allegations of negligence on the part of the insured.  Sears argues that since it was sued for its own alleged negligence in connection with Bland’s sexual assault, National Union therefore had a duty to defend Sears against Bland’s underlying complaint.  In support of this argument, Sears relies on the Pennsylvania Supreme Court decision in 
Mohn v. American Casualty Co.
, 458 Pa. 576, 326 A.2d 346 (1974), and 
Pipher
, where both courts held that a third party’s intentional act was a covered "occurrence" if, from the insured’s perspective, the intentional act was unexpected and unintended.

In 
Mohn
, the plaintiff sought recovery under two medical insurance policies for expenses incurred as a result of his son’s hospitalization. 
Mohn
, 458 Pa. at 577, 326 A.2d at 347.  The plaintiff’s son was fatally wounded when he was shot by a police officer as he was attempting to flee from the scene of a burglary he was in the process of committing. 
Mohn
, 458 Pa. at 577, 326 A.2d at 347.  The 
Mohn
 court held that the shooting constituted an "accidental bodily injury" when viewed from the son’s perspective, and therefore the plaintiff was entitled to coverage.
 Mohn
, 458 Pa. at 578, 586, 326 A.2d at 348, 352.  The 
Mohn
 court went on to state that the "test of whether injury is a result of an accident is to be determined from the viewpoint of the insured and not from the viewpoint of the one that committed the act causing the injury." 
Mohn
, 458 Pa. at 578, 326 A.2d at 348.

The Third Circuit Court of Appeals in 
Pipher
 relied on the 
Mohn
 decision in holding that whether an injury is an "accident" must be determined from the perspective of the insured. 
Pipher
, 140 F.2d at 225-26.  In 
Pipher
, the insured, Linda Pipher, leased an apartment to Francis McFadden and his wife Bernine. 
Pipher
, 140 F.2d at 223.  Prior to leasing the apartment to the McFaddens, either Pipher or the previous tenants removed the doors to the apartment in order to install new carpeting.  The doors were never reinstalled. 
Pipher
, 140 F.2d at 223.  After the McFaddens took possession of the apartment, a painter whom Pipher hired to paint the apartment assaulted and killed Bernine while she was in the apartment.
 Pipher
, 140 F.2d at 224.

The 
Pipher
 court found that, from Pipher’s perspective, Bernine’s assault was unexpected and therefore constituted an "accident" which would be covered under the terms of the insurance policy.  The 
Pipher
 court determined that Pipher’s negligence in hiring a painter with a troubled past and failing to reinstall the apartment doors resulted in an accident -- the unexpected, unintended murder of her tenant, Bernine. 
Pipher
, 140 F.2d at 226.  The 
Pipher
 court went on to hold that if the Pennsylvania Supreme Court was confronted with this issue, it would hold that bodily injury resulting from a third party’s intentional conduct would be regarded as an "occurrence" requiring coverage under an occurrence-based insurance policy if, from the insured’s perspective, the injury was unexpected and the injury was potentially attributable to the insured’s own negligence. 
Pipher
, 140 F.2d at 228.

In the present case, Sears argues that based on the reasoning set forth in the 
Mohn
 and 
Pipher
 decisions, Bland’s sexual assault constituted an accidental "occurrence" requiring coverage under the Policy, because from Sears' perspective the sexual assault was unintended and unexpected.  However, a similar argument was rejected in 
Gene’s Restaurant
 where the restaurant argued that its insurer had a duty to defend it in the underlying lawsuit because it neither "expected" nor "intended" its patron to be assaulted. 
Gene’s Restaurant
, 519 Pa. at 309 n.1, 548 A.2d at 247 n.1.  The Pennsylvania Supreme Court responded that such an argument ignored insurance policy requisites that an "occurrence" must be an accident, which an assault could never be. 
Gene’s Restaurant
, 519 Pa. at 309 n. 1, 548 A.2d at 247 n.1.

Sears also contends that its position is supported by the holding in 
Weiner
.  In 
Weiner
, a patron sued the owners of a bar alleging that a co-owner and an employee of the bar struck the patron in the neck. 
Weiner
, 431 Pa. Super. at 278, 636 A.2d at 650.  The complaint set forth alternative theories of liability against the insureds such as negligent infliction of emotional distress and negligent failure to provide adequate protection for business invitees. 
Weiner
, 431 Pa. Super. at 278, 636 A.2d at 650.  The complaint also alleged that the plaintiff's injuries were either the result of an "accident" or the intentional or negligent acts of the insured bar or its employees. 
Weiner
, 431 Pa. Super. at 282, 636 A.2d at 652.  The policy provided coverage for damages resulting from "occurrences," which were defined as accidents. 
Weiner
, 431 Pa. Super. at 281-82, 636 A.2d at 652.  The court found that the insurer had a duty to defend its insured because the complaint alleged that the conduct causing the harm may have been committed negligently as well as intentionally. 
Weiner
, 431 Pa. Super. at 283, 636 A.2d at 652.

Weiner
 demonstrates that the relevant inquiry is not whether the underlying complaint alleges negligence as a theory of liability, but whether the conduct causing the injury may have been committed negligently.  For example, in 
Terra Nova Insurance Co. v. 900 Bar
, 887 F.2d 1213, 1217 (3d Cir. 1989), the owners of a bar asked their insurance company to defend them against claims for damages resulting from two patrons being shot by an employee of the bar.  The court found that the insurer had a duty to defend the bar in the underlying lawsuit because the complaint contained allegations of negligence against the bar that were broad enough to include the possibility that the bar’s employee had pointed his gun at an inanimate object and inadvertently shot the patrons, or that the gun discharged due to negligence. 
Terra Nova
, 887 F.2d at 1226.

Unlike the conduct at issue in 
Weiner
 and 
Terra Nova
, the conduct alleged to have caused the bodily injuries in Bland’s complaint was solely intentional conduct.  As the trial court stated, "[y]ou cannot allege rape in a negligent manner."  Sears’ alleged negligence in hiring an employee with a troubled past may have helped create the conditions which made Bland's sexual assault possible, but this does not change the fact that the sexual assault itself was the direct result of a solely intentional act. See, 
e.g
., 
Erie Insurance Exchange v. Claypoole
, 449 Pa. Super. 142, 157, 673 A.2d 348, 356 (1996) (stating that "injuries resulting from sexual assault committed on children in cases of sexual molestation are intentional as a matter of law")

Based on the foregoing and in particular on the holding in
 Grzeskiewicz
, this court finds that because Bland's complaint alleged that the conduct causing the bodily injury was solely intentional, there was no "occurrence" within the meaning of the Policy and, therefore, National Union had no duty to defend or indemnify Sears in the Bland lawsuit, even though the complaint also alleged that the conduct causing the bodily harm was attributable to Sears’ negligence.

Accordingly, for the reasons set forth above, the circuit court’s final order dismissing Sears’ amended complaint is affirmed.

Affirmed.

WOLFSON and BURKE, JJ., concur.

FOOTNOTES
1:    
In 
West
, the United States Supreme Court stated that an intermediate appellate court decision is datum for ascertaining state law and is not to be disregarded by a federal court unless it is convinced by other persuasive authority that the state’s highest court would decide otherwise.
 
West
, 311 U.S. at 226,  85 L. Ed. at 144
, 61 S. Ct. at 183.